[Crim. No. 8737. First Dist., Div. One. Dec. 7, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ALVIN CLAYTON, JR., Defendant and Appellant.

## COUNSEL

Sheldon Portman, Public Defender, and Rose Elizabeth Bird, Deputy Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Alvin Clayton, Jr., was charged in an information with a violation of Health and Safety Code section *11501* (transportation of a narcotic). He was found "guilty of the offense charged in the Information on file herein, a violation of section *11500* of the Health and Safety Code." (Italics added.) Section 11500 proscribes possession (not transportation, as does section 11501) of certain narcotics. We construe Clayton's conviction to be of "possession" of a narcotic (§ 11500) an offense lesser than, and included within, the charge of the information. Clayton was

committed for narcotic addiction to the California Rehabilitation Center. For the purpose of appeal such a commitment "shall be deemed to be a final judgment." (Pen. Code, § 1237.) Clayton's appeal is from the "judgment."

His conviction followed an unsuccessful motion under Penal Code section 1538.5 to suppress a container of heroin, the evidence upon which his conviction was based. The only contention of error relates to the denial of that motion. It is urged that the police officer's conduct did not conform to Fourth Amendment requirements.

There was no conflict in the evidence. Around midnight two San Jose police officers observed an inoperative stoplight on an automobile which paused at an intersection signal. After motioning the car to pull over to the edge of the road, one of the officers approached the vehicle. As he did so defendant Clayton, who was seated in the right front seat, lifted "himself up from the seat with both arms in his rear portion of his body behind his back, both arms went up and down rapidly." Clayton was asked to leave the vehicle; the officer's purpose was to "pat search for weapons the area which he was moving toward." No weapons were found. The officer then asked for identification; Clayton responded by removing and opening his wallet. While he was looking through the wallet "a white piece of paper, which appeared to be in a pharmaceutical fold," fell from the wallet to the ground. The officer then picked up the paper and opened it. In the "pharmaceutical fold" was a brown powder substance which appeared to the officer to be heroin.

The police officer had a right, and a duty, to stop the subject vehicle for the purpose of a citation, or perhaps to point out the defective brake signal lamp and its attendant danger. (See Veh. Code, § 22110.) When he observed Clayton's unusual movements within the car it became reasonable for him to make a weapon search of his person (See *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]); failure to take similar precautions has resulted in the death of many law enforcement officers. The officer's request for identification was reasonably based on conduct giving rise to the weapon search; it does not appear to have been based upon a "mere hunch" as suggested by Clayton.

The real substance of Clayton's complaint seems to relate to the unfolding by the officer of the "pharmaceutical paper" which had dropped out of the wallet.

It is now common knowledge among law enforcement officers, and trial counsel and judges, that small usable quantities of heroin are customarily carried in "bindles," small intricately folded papers aptly described by the

police officer of our case as a "pharmaceutical paper." These papers are readily recognizable. While there may be other purposes for this type of container we are unable to call any to mind. The probability that such a paper found under the circumstances of this case would contain heroin is in our opinion strong. And reasonable respect should be paid to police "expertise in the area of detecting suspicious circumstances which, to an ordinary individual, might appear innocent." (*People* v. *Beasley,* 250 Cal. App.2d 71, 79 [58 Cal.Rptr. 485]; *People* v. *Ortiz,* 208 Cal.App.2d 572, 579 [25 Cal.Rptr. 327].)

Having observed an apparent narcotic container fall from the possession of Clayton, the police officer had reasonable and probable cause to believe that he had committed the crime of possessing narcotics. As an incident to Clayton's arrest the officer was permitted to search the interior of the bindle (*People* v. *Cruz,* 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889]); it was immaterial that this search immediately preceded the arrest (*People* v. *Terry,* 70 Cal.2d 410, 429 [77 Cal.Rptr. 460, 454 P.2d 36]). Furthermore, it would appear that the rule allowing a search of an unoccupied vehicle reasonably suspected of carrying narcotics (*People* v. *Terry, supra,* p. 428; *People* v. *Superior Court,* 8 Cal.App.3d 398, 401 [87 Cal.Rptr. 283]), must logically be extended to other types of containers, i.e., "bindles" or "pharmaceutical papers," so reasonably suspected. As with automobiles, such containers would probably vanish before a search warrant could be obtained.

The narcotic evidence was admissible at the trial, and the court's denial of Clayton's motion to suppress was without error.

The commitment for narcotic addiction, described as the "judgment" in the notice of appeal, is affirmed.

Molinari, P. J., and Sims, J. concurred.

A petition for a rehearing was denied December 22, 1970, and appellant's petition for a hearing by the Supreme Court was denied January 28, 1971.