[Crim. No. 16074. First Dist.. Div. One. June 2, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL VERN O'LEARY et al., Defendants and Respondents.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Sanford Svetcov, Deputy Attorneys General, for Plaintiff and Appellant.

James C. Hooley, Public Defender, Anne Harris and Robert H. Betzenderfor, Assistant Public Defenders, and Allan Hymer for Defendants and Respondents.

**OPINION**

**ELKINGTON, J.**—Defendants Michael Vern O'Leary and Arthur Gene Martin were held to answer by a magistrate for trial in the superior court on charges of possession of marijuana for sale (Health & Saf. Code, § 11359) and possession of a tear gas container (Pen. Code, § 12420). Evidence essential to the holding and to any subsequent convictions had

been seized by police upon the execution of a search warrant which had been found valid by the magistrate. Thereafter the superior court, on defendants' motion under Penal Code section 995, ordered the information which had been filed by the People set aside, for the reason that "there was insufficient legal evidence to hold the defendants to answer; . . ."

The People, as permitted by Penal Code section 1238, subdivision (a)(1), have appealed from the order. The issue is whether a police officer's affidavit, upon which the subject search warrant was based, disclosed probable cause for its issuance according to Fourth Amendment standards.

The parties agree that the factual context alleged in the affidavit is such that the issue is one of first impression. We therefore look to applicable general rules.

■ "There is no exact formula for the determination of reasonableness [or probable cause]. Each case must be decided on its own facts and circumstances . . . and on the total atmosphere of the case." (*People* v. *Ingle,* 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577] [cert. den., 364 U.S. 841 (5 L.Ed.2d 65, 81 S.Ct. 79)].)

■ Probable cause for the issuance of a search warrant exists where the facts contained in the affidavit are such as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the existence of contraband in the premises sought to be searched. (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].) ■ And "when a search is based on a warrant (and therefore on a magistrate's rather than a police officer's determination of probable cause) the reviewing courts 'will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant." . . .' " (*Skelton* v. *Superior Court, supra,* p. 150; and see also *United States* v. *Ventresca,* 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741]; *Jones* v. *United States,* 362 U.S. 257, 270 [4 L.Ed.2d 697, 707-708, 80 S.Ct. 725, 78 A.L.R.2d 233]; *People* v. *Mesa,* 14 Cal.3d 466, 470 [121 Cal.Rptr. 473, 535 P.2d 337].)

■ It is fundamental that on a dismissal motion under Penal Code section 995 the superior court may not reweigh evidence, or draw inferences contrary to those reasonably drawn by the magistrate. This rule applies with equal effect where the issue resolved by the magistrate relates, as here, to the Fourth Amendment. Our function, then, is simply to determine if there is any substantial evidence in support of the *magistrate's* conclusion, not that of the *superior court.* (*People* v. *Lovejoy,* 12 Cal.App.3d 883, 885-886 [91 Cal.Rptr. 94], and see authority there collected.)

■ Pursuant to these rules we state the allegations of the police officer's affidavit, as they reasonably could have been and therefore presumably were, found true by the magistrate.

At the San Francisco International Airport, suspicion of United States Customs officials and local police authorities had somehow centered upon a large cardboard carton wrapped with brown paper and tied with pink ribbon, which was en route by air freight from Thailand to a consignee whose address was 6466 Pinehaven Road, Oakland, California. Investigation disclosed that Michael O'Leary, one of the instant defendants, was the subscriber for, and paid for, the gas and electric service at that address. Thereafter O'Leary produced an appropriate "Air-Way Bill" and claimed the shipment. He was required to open the carton by customs officers. Inside it were found two pillows, one of which appeared much heavier than the other. Further inspection of the heavier pillow disclosed more than 400 "Thai-sticks," a high potency form of marijuana and worth around $12,500. Upon being questioned O'Leary stated that he had recently returned after a 17-day visit to Thailand where he had an "importing" (*sic*) business. He admitted shipping the carton but denied knowledge of its contraband contents, "explaining that he felt that his business partner could have secreted the contraband." He was unable to give an address for his Thailand business. O'Leary was then arrested.

About two weeks later another similarly wrapped package from Thailand became an object of suspicion at the airport. Its consignee's address was 686 Alma Avenue, Oakland, California. Telephone company records indicated that a telephone at that address was listed to Michael O'Leary. This time the shipment was claimed by one Monroe who was directed to open the carton for customs' inspection. It contained a like quantity of Thai-sticks concealed in a similar manner as in the earlier shipment. Monroe explained that he had been given $100 by one

Ray (*sic*) Martin for picking up the package, and he was thereafter arrested.[1]

The affiant police officer, an eight-year veteran of the county sheriff's office, assigned to the narcotics investigation detail for the past four years, expressed the "belief through his experience that Michael O'Leary is trafficking in narcotics and is using the address of 6466 Pinehaven Road in Oakland and 686 Alma Avenue in Oakland as 'Stash pads' and places to sell the narcotics." ▉ "The rule requiring probable cause 'should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes.' " (*People* v. *Medina,* 7 Cal.3d 30, 37 [101 Cal.Rptr. 521, 496 P.2d 433]; *People* v. *Superior Court (Kiefer)* 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].)

▉ From the police officer's affidavit the magistrate could reasonably conclude, and presumably did so conclude, that O'Leary was in the business of exporting large and costly quantities of contraband from Thailand to premises occupied, or controlled, by him in Oakland, California. From the quantity and nature of the contraband it was probable that it was brought into this country for resale. Indeed, we are of the opinion that such conclusions were compelled by the affidavit's evidentiary showing. It was thus reasonable to infer that each of the premises to which the contraband was consigned was in the nature of an entrepôt from which, as opined by the police officer, it would from time to time be sold or otherwise disposed of in smaller quantities.

Under the facts and circumstances disclosed by the police officer's affidavit, the magistrate as a conscientious person of ordinary caution and prudence, *reasonably* entertained a strong suspicion of the existence of contraband in the premises controlled or occupied by O'Leary. It is of no consequence that the superior court reached a different conclusion.

---

[1]The police officer's affidavit also recited that a warrantless search of a suitcase found in Monroe's impounded vehicle disclosed a "telephone address book" with the "name, address and telephone number of suspect O'Leary," and a diary indicating, among other things, that Monroe had participated in the purchase and sale of "kilo quantities of marijuana." We are informed by counsel that the suitcase's contents "were ordered excluded at the preliminary examination." In our determination of the affidavit's sufficiency we excise from it, and do not consider, such improperly obtained evidence. (See *Theodor* v. *Superior Court,* 8 Cal.3d 77, 100-101 and fn. 14 [104 Cal.Rptr. 226, 501 P.2d 234].)

There was thus probable cause for the issuance of the search warrant, and the order of the superior court must be reversed.

Reversed.

Sims, Acting P. J., and Lazarus, J.,* concurred.

A petition for a rehearing was denied June 28, 1977, and the opinion was modified to read as printed above. The petition of respondent Martin for a hearing by the Supreme Court was denied July 29, 1977. Sullivan, J.,† participated therein.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.