[Crim. No. 37761. Second Dist., Div. Two. June 12, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
KELLY MICHAEL SMITH, Defendant and Respondent.

---

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

William E. Collins, under appointment by the Court of Appeal, for Defendant and Respondent.

---

**OPINION**

**BEACH, J.**—Defendant was charged by information with possession of cocaine. He successfully moved in the superior court for dismissal of the information. This appeal by the People followed. We reverse.

### FACTS:

In the early morning hours on August 28, 1979, Officer Baker of the Los Angeles Police Department, assigned to the Van Nuys division, was on duty in a marked police vehicle on Ventura Boulevard near Firmament Avenue. With him was another officer. Both were in uniform.

In the past two months, the police had received numerous complaints about prowlers and attempted break-ins at the apartments of single women in the area just described. That very evening at roll call the officers had been told that in the area in question a male Caucasian had 10 days earlier forced a woman into her vehicle where he attempted to rape her. After roll call, at 12:31 in the morning, Officer Baker personally checked out a report about an attempted rape in the neighborhood. The woman described the suspect as a male Caucasian in his mid twenties, with brown hair.

Thereafter, at 4:30 in the morning, while continuing his patrol of the neighborhood, Officer Baker's attention was drawn to a late-model, four-door Chevrolet automobile which had its interior lights on and was parked on Firmament Avenue near Ventura Boulevard next to a closed gas station. A small pickup truck with a camper shell was parked in front of the passenger car. The passenger car contained two persons: a black woman in the driver's seat and a male Caucasian (defendant) in the passenger seat. As the police vehicle passed the intersection, Officer Baker saw defendant look at the vehicle, hurriedly leave the passenger car, and head towards the pickup truck. The fact that defendant appeared to fit the description of the suspect involved in the attempted rape of a woman in her car in that neighborhood, and the fact that in this instance defendant was seen in a car with a woman at such an unusually early hour, together with defendant's hurried exit from the woman's car when the police vehicle drove by, aroused Officer Baker's suspicion. So he and his partner turned back to investigate. By that time, defendant was standing at the open passenger door of the pickup truck. Officer Baker approached him while his partner went to talk to the woman in the passenger car.

Officer Baker asked defendant for identification. Defendant showed the officer a frayed temporary California driver's license. Noticing that the license had long since expired, the officer asked for additional identification. Defendant then showed a triple A membership card. Suddenly defendant "spun around," jumped into the pickup truck through the open passenger door, bent over, and placed his right arm underneath the passenger seat. Taken by surprise, and fearing that defendant was reaching for a weapon, the officer drew his service revolver and ordered defendant out of the truck with his hands in plain sight. Defendant failed to comply. Officer Baker repeated his order to exit the truck. Again defendant ignored the order. When defendant stuck his arm underneath the driver's seat, the officer yelled at defendant to come out and keep his hands in plain sight. Defendant, however, paid no heed. At that point, Officer Baker's partner grabbed defendant by the left arm and pulled him out of the truck. As he was doing that, Officer Baker saw defendant use his right hand to throw some white objects resembling pieces of paper or credit cards into the open camper shell. After defendant's removal from the truck, Officer Baker conducted a pat-down search, handcuffed defendant, and retrieved the objects which defendant had thrown into the camper. They turned out to be a syringe and two "bindles" or small paper packets marked with a snow flake against a blue background and the words "sno seals." Having seen

such bindles hundreds of times in his career, Officer Baker knew they generally contained cocaine or heroin. As to the symbol on the packets, Officer Baker had seen them before on two prior arrests for cocaine possession. After retrieving the objects, Officer Baker arrested defendant for possession of cocaine.

DISCUSSION:

■ In ruling on defendant's motion to dismiss the information under Penal Code section 995, the superior court stated: "Well, I hope the People take the case up, and I hope they win on appeal. Because if it were up to me to decide on the reasonableness of the detention, I think the officer's conduct was appropriate, but under California law, I think it was not a sufficient articulation of facts to justify the initial detention.

"Also, my view that if the initial detention was a lawful detention, everything that followed was lawful and certainly the officer, based on the record of the transcript of the preliminary hearing, the officer acted reasonably thereafter, after the initial detention, but it is my view that on the record made below that there was not a sufficient articulated basis for the initial detention.

"Under California law and the 995, it must be granted."

■ An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and that the accused is guilty of it. (*People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664]; *People* v. *Wyrick* (1978) 77 Cal.App.3d 903, 908 [144 Cal.Rptr. 38].) In considering a dismissal motion under Penal Code section 995, the superior court may not reweigh the evidence or draw inferences contrary to those reasonably drawn by the magistrate. (*People* v. *Hall, supra,* at p. 996.) On appeal, our function is simply to determine whether substantial evidence supports the conclusion of the *magistrate,* not that of the superior court. (*People* v. *O'Leary* (1977) 70 Cal.App.3d 323, 328 [138 Cal.Rptr. 667].) Every legitimate inference that may be drawn from the evidence must be drawn in favor of the information. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *People* v. *Velasquez* (1975) 53 Cal.App.3d 547, 553 [126 Cal.Rptr. 11].)

■ Circumstances short of probable cause to make an arrest may justify a police officer stopping and briefly detaining a person for questioning or other limited investigation. (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957]; *People v. Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) To justify an investigative stop or detention, the circumstances known or apparent to the officer must include specific and articulable facts which cause him to suspect that (1) some criminal activity has taken place or is about to occur, and (2) the person he intends to stop is involved in that activity.[1] (*In re Tony C., supra,* 21 Cal.3d 888, 893; *People v. Jones* (1980) 103 Cal.App.3d 885, 889 [163 Cal.Rptr. 251]; *People v. Schoennauer* (1980) 103 Cal.App.3d 398, 407 [163 Cal.Rptr. 161].) The officer must subjectively entertain such a suspicion, and it must be objectively reasonable for him to do so. (*In re Tony C., supra,* at p. 893; *People v. Jones, supra,* at p. 889.) The purpose of permitting a detention short of probable cause to make an arrest but based on a reasonable suspicion of criminal activity is to "'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" [Citation omitted.] (*People v. Haugland* (1981) 115 Cal.App.3d 248, 255 [171 Cal.Rptr. 237].)

■ Based on recent reports of attempted rapes in the neighborhood, the fact that on one of those occasions the suspect had attempted to rape a woman in her car, the fact that in this instance at 4:30 in the morning Officer Baker saw a male Caucasian fitting the description of the suspect sitting in the passenger seat of a car where a woman was behind the wheel, and the fact of the male's hurried exit from the car as the police vehicle drove by, we conclude that the officer was justified in suspecting that the man, defendant, was involved in criminal activity.

[1]Recently, in *United States v. Cortez* (1981) 449 U.S. 411 [66 L.Ed.2d 621, 101 S.Ct. 690] involving a border stop of a vehicle, the United States Supreme Court held that an investigatory stop is justified when based upon the "whole picture" the detaining officers have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." As it stated: "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." Concurring in the result, Justice Stewart expressed the view that the officers had discovered an abundance of "specific articulable facts" which, together with the rational inferences from them, entirely warranted a suspicion that the detained vehicle contained aliens who might be illegally in the country, and that therefore the information possessed by the officers met the requirements previously established by the United States Supreme Court for the kind of stop made in *Cortez.*

■ We agree with the superior court that the officer's conduct following the initial detention was proper. Defendant's sudden entry into his truck while being questioned by Officer Baker on the sidewalk, his bending down and reaching under the driver's seat, and his subsequent throwing of some white objects resembling pieces of paper or credit cards into the truck's camper area in an obvious effort to dispose of them, did not foreclose a reasonable suspicion on the part of Officer Baker that other criminal activity was in progress, i.e., that the objects might be stolen credit cards or "bindles" containing contraband. (See *People v. Podesto* (1976) 62 Cal.App.3d 708, 717-718 [133 Cal.Rptr. 409].) Officer Baker's testimony at the preliminary hearing leaves room for such an inference. He testified the pieces of paper looked like credit cards to him and he suspected them to be stolen. Earlier he had testified that when he saw defendant suddenly jump into the truck, "bending over and placing his right arm up underneath the passenger seat," he believed defendant might be reaching for a weapon or "stashing contraband."

Under the circumstances, Officer Baker would have been derelict in his duty if he had not attempted to ascertain the nature of the objects he had seen defendant throw into the truck's open camper shell. (*People v. Podesto, supra*, 62 Cal.App.3d 708, 717.) The officer's entry into the camper section of the truck to retrieve the objects was therefore proper. (*People v. Guy* (1980) 107 Cal.App.3d 593, 599 [165 Cal.Rptr. 463]; *People v. Diaz* (1980) 101 Cal.App.3d 440, 446 [161 Cal.Rptr. 645].)

Once Officer Baker observed the small paper packets or "bindles," he was justified in opening them. "Bindles" are commonly known by law enforcement officers, judges, and trial counsel to be containers for heroin or cocaine. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 898-899 [150 Cal.Rptr. 910, 587 P.2d 706]; *People v. Clayton* (1970) 13 Cal. App.3d 335, 337-338 [91 Cal.Rptr. 494].) Here, Officer Baker testified that having made hundreds of narcotics arrests, he knew from experience that such bindles generally contained heroin or cocaine. Also, in this particular instance the bindles each had a snow flake against a blue background, with the words "sno seals" on them. On two previous arrests for cocaine possession, Officer Baker had seen bindles with that symbol and those words. Moreover, lying next to the bindles was a syringe, which is commonly used to inject narcotics. Under the totality of circumstances, therefore, Officer Baker had reason to believe that the bindles contained contraband.

Thus, having probable cause to believe that appellant had committed the crime of possessing contraband, it was proper for the officer to open the bindles.[2] (*People* v. *Clayton, supra*, 13 Cal.App.3d 335, 338.)

The order of the superior court setting aside the information is reversed.

Roth, P. J., and Compton, J., concurred.

---

[2]Because the bindles were containers which, as we already discussed, strongly indicated the presence of cocaine, this case is readily distinguishable from the "closed container" situation in both *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal.Rptr. 224, 591 P.2d 514] and *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]. Unlike the instant case, *Minjares* and *Chadwick* involved searches of closed personal effects where the contents remained unascertained until the opening of the container. (See *People* v. *Guy, supra*, 107 Cal.App.3d 593, 599-600.)