[No. C005677. Third Dist. May 31, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM J. NONNETTE et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

**COUNSEL**

Cynthia A. Thomas and Richard Phillips, under appointments by the Court of Appeal, and Don L. Stockett for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Janet Neeley Kvarme, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARLER, J.—

. . . . . . . . . . . . . . . . . . . . . . .*

### FACTUAL AND PROCEDURAL BACKGROUND

William and George Nonnette and two juveniles were arrested in Sacramento after a police officer found rock cocaine in a clutch purse in their car.

At the preliminary hearing, George made a motion pursuant to Penal Code section 1538.5 to suppress evidence found during a warrantless search of the car on the basis the officer lacked probable cause to seize and search the clutch purse which contained rock cocaine.

Two officers testified at the preliminary hearing. The arresting officer was Luis Flores, a 10-year veteran with the police department. He testified as to the events leading to the arrests on February 18, 1988. While on patrol he received a call from dispatch at about 1:30 in the afternoon that an unidentified citizen had reported a suspicious car parked on Caselli Circle containing four males who were ducking up and down. On his way to investigate Officer Flores learned the car was registered to a George Nonnette in Los Angeles.

When he arrived at Caselli Circle, Officer Flores saw the car, but no one in it. He was then approached by a citizen who spoke to him for five to ten minutes about drug problems in the area of 7490 Franklin Boulevard. Officer Flores then saw George in the car. George was in the back seat on the passenger side; a juvenile was next to him. William was in the driver's seat and another juvenile was next to him. Officer Flores approached the car with his hand on his gun. He was suspicious because the car was from Los Angeles and he knew drugs came from there, and the car was parked in a

---

*See footnote, *ante,* page 659.

high drug area. He testified he was always concerned with his personal safety, but the people in the car made no furtive gestures and did nothing to frighten him.

He approached the car and asked for identification. Only George, who said he owned the car, had identification. All four people in the car gave the officer their correct names.

George explained that he was in town to visit a friend. When asked, he showed the officer his friend's address; it was in North Highlands, a 30-minute drive away.

Officer Flores saw a man's black clutch purse in the map pocket behind the front passenger seat. The clutch purse was open and inside he saw a bundle of tiny baggies; they were empty. He could also see a white prescription bottle in the purse. The officer suspected drugs because he knew the baggies were the type used for drugs. He testified that seeing the baggies meant someone was selling something: "That's the normal thing in that area there. A lot of sales of drugs and the baggies alone means that somebody is selling something." He decided he should search the purse for two reasons. First, because it might contain drugs, and second, because he believed William was lying about having no identification and there might be some in the purse.

He ordered the four males out of the car and had them lie on the grass until his cover arrived.

He then searched the black bag. Inside he found 50 one-inch baggies and a prescription bottle with a name on it differing from any of the car's occupants. He opened the bottle and found 10 baggies containing rock cocaine and 16 pills known as cross-tops, as well as many pieces of pills. It was stipulated the bottle contained 4.19 grams of cocaine base. Officer Flores asked the men if they had any money. William had $77 and George had $1,229. On the floor of the car the officer also found a jacket with a bag containing 9.4 grams of rock cocaine in it and a pager. After finding the cocaine in the purse, Officer Flores also searched the trunk of the car.[1]

The second officer testifying at the preliminary hearing was not present at the arrest. He testified that, based on his training and experience with narcotic arrests, he believed the drugs were possessed for sale.

---

[1] After the arrest the car was impounded. A search of the entire car revealed additional rock cocaine in the door of the car.

After receiving briefing on the suppression motion, the magistrate denied the motion. Both George and William then moved to dismiss the charges; these motions were also denied.

In the trial court George moved to set aside the information under Penal Code section 995, and William moved to suppress evidence under Penal Code section 1538.5. Both motions were denied.

The case then went to trial. After three and a half days of testimony, the jury deliberated an hour and ten minutes before returning guilty verdicts as to both William and George.

A bifurcated trial was held on the issue of William's prior conviction; the court found that William had been convicted of a felony within the past five years. George was sentenced to the upper term of five years in prison and William to six years.

Both defendants have appealed.

### DISCUSSION

### I-III*

. . . . . . . . . . . . . . . . . . . . .

### IV

Defendants contend both the magistrate and the trial court erred in finding Officer Flores had probable cause to search the car and thus denying their motions to suppress the evidence found as a result of the search or to dismiss the charges. ■ The motions before the trial court were submitted on the record of the preliminary hearing pursuant to Penal Code section 1538.5, subdivision (i). In these situations we disregard the findings of the trial court and review the determination of the magistrate. We review the evidence in the light most favorable to the magistrate's ruling and will uphold the magistrate's express or implied findings if supported by substantial evidence. (*People* v. *Ramsey* (1988) 203 Cal.App.3d 671, 679 [250 Cal.Rptr. 309].) We then independently review whether these findings support the legal conclusion of probable cause. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 598 [174 Cal.Rptr. 867, 629 P.2d 961].)

---

*See footnote, *ante,* page 659.

■ The issue presented is whether the sight of a prescription bottle and a bundle of small, empty baggies in a car registered in Los Angeles and parked for some time in a high drug area of Sacramento, in which there were four males observed ducking up and down, only one of whom had identification, and who professed to be in town to visit a friend who lived thirty minutes away, gave the officer probable cause to believe the car or a container in it held contraband.[2] We find that these circumstances are sufficient to support the magistrate's finding of probable cause to justify the seizure of the purse and the search of the purse or the car.

In response to defendants' contention that Officer Flores lacked probable cause to seize the purse, the Attorney General contends the seizure was justified under the plain view doctrine: the presence of the baggies in plain view combined with other suspicious circumstances gave the officer probable cause to believe the purse contained contraband and thus justified the seizure under *Texas* v. *Brown* (1983) 460 U.S. 730 [75 L.Ed.2d 502, 103 S.Ct. 1535]. The magistrate relied on the plain view doctrine in making his ruling. He denied the motion to suppress on the grounds the officer "had the right to be where he was and he observed what appeared to him to be contraband in plain view, and there were suspicious circumstances . . . ."

In *Texas* v. *Brown, supra,* the Supreme Court held an officer may, without a warrant, seize a container in plain view where the officer has probable cause to believe the container holds an illegal substance. (460 U.S. at p. 742 [75 L.Ed.2d at pp. 513-514].) In *Brown*, after stopping a driver at a routine driver's license checkpoint, the officer saw the man drop a knotted green balloon. The officer also saw plastic vials, white powder and a package of balloons in the car's glove compartment. The officer knew, due to his experience with drug arrests, that drugs were often carried in knotted balloons. (*Id.* at p. 733 [75 L.Ed.2d at p. 508].) The high court found that the officer's knowledge of the distinctive manner of carrying drugs and the further suggestion of illicit activity apparent in the glove compartment gave him probable cause to believe the balloon contained drugs; its seizure was therefore valid under the plain view doctrine without a warrant. (*Id.* at p. 743 [75 L.Ed.2d at p. 514].)

■ In concluding that the officer had probable cause, the high court commented on the standard of probable cause: "As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of

---

[2] If the officer had probable cause to believe the car contained drugs, then he could search the car and all containers within it that could contain drugs without a warrant under the automobile exception to the warrant requirement. (*United States* v. *Ross* (1982) 456 U.S. 798, 825 [72 L.Ed.2d 572, 594, 102 S.Ct. 2157].)

reasonable caution in the belief,' [citation], that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required. [Citation.]" (*Texas* v. *Brown, supra*, 460 U.S. at p. 742 [75 L.Ed.2d at p. 514].) We turn now to a determination of whether the facts known to Officer Flores "would warrant a man of reasonable caution in the belief" the car contained drugs.

Of the several suspicious circumstances contributing to Officer Flores's decision to search the clutch bag, the main factor, in the eyes of both the officer and the magistrate, was the officer's sighting of a bundle of small, plastic baggies. Defendants contend the magistrate could not rely on this fact in finding probable cause because baggies are common containers with many legitimate uses, they are not so distinctive in nature as to indicate drug activity, and Officer Flores failed to provide sufficient foundational testimony to establish the basis for his suspicion that these common baggies were connected to an illegal activity. Defendants rely on a line of cases in which the courts have determined that the presence of a common container is insufficient to provide probable cause for a search or seizure.

█ Courts have held that certain containers are so distinctive in nature that an officer may, based on his experience with such containers in previous arrests, have probable cause to search or seize such a distinctive container in plain view. Examples of such containers are paper bindles (*People* v. *Lilienthal* (1978) 22 Cal.3d 891, 898-890 [150 Cal.Rptr. 910, 587 P.2d 706]; *People* v. *Clayton* (1970) 13 Cal.App.3d 335, 337-338 [91 Cal.Rptr. 494]), heroin balloons (*People* v. *Lee* (1987) 194 Cal.App.3d 975, 984 [240 Cal.Rptr. 32]), and brick-shaped packages smelling like marijuana. (*People* v. *McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].) However, where the container is a common one with legitimate purposes, its presence is not enough to establish probable cause. (*Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 662-663 [87 Cal.Rptr. 202, 470 P.2d 11] [tinfoil package]; *People* v. *Holt* (1989) 212 Cal.App.3d 1200, 1206-1207 [261 Cal.Rptr. 89] [foil-wrapped package]; *People* v. *Valdez* (1987) 196 Cal.App.3d 799, 806-807 [242 Cal.Rptr. 142] [film canister].)

In *People* v. *Huntsman* (1984) 152 Cal.App.3d 1073 [200 Cal.Rptr. 89], this court required the officer to provide foundational testimony linking the common container he observed, a plastic bag, with illicit activity, before the presence of the plastic bag could be used as a suspicious circumstance contributing to probable cause. In *Huntsman*, while on a vice assignment in an area known for prostitution, the police observed two men standing near an open trunk of a car; one man was holding an eight-by eleven-inch plastic

bag. The police could not see the bag's contents. When the police approached the man slammed the trunk closed. The officers then yelled, "Police, stop" and the men hurried away. (*Id*. at p. 1079.) The police detained defendant, who refused to identify himself. The police opened the locked trunk and found the plastic bag which contained smaller baggies with white powder in them. (*Id*. at p. 1080.) Defendant sought to suppress this evidence. The People argued there was probable cause for the search, relying on the following factors: defendant was holding the plastic bag, the person next to him appeared to be a lookout, it was in a high prostitution area, defendant slammed the trunk closed when the police approached, the men walked away faster after the police identified themselves, defendant refused to identify himself, and when detained defendant had the keys to the trunk but not the bag. (*Id*. at p. 1083.) This court found these factors insufficient to establish probable cause. (*Ibid*.)

Of primary concern was the lack of foundational testimony linking the bag with an illicit purpose, which would have made the officer's sighting of defendant holding the bag a suspicious circumstance contributing to probable cause. We noted that the officer's testimony did not indicate any expertise in determining whether such bags may contain contraband or any experience with such bags in prior narcotic arrests. (152 Cal.App.3d at p. 1084.) We concluded: ". . . whether a common container constitutes a suspicious circumstance, capable of contributing to the totality of circumstances necessary for probable cause, depends on the total factual context in which the container is observed, including the prior experience of the observing officer with containers of the sort at issue . . . . Accordingly, we hold that, in order to permit judicial review of the legality of a detention, arrest, or search, an officer's reasons for suspecting that a common container is being used for unlawful purposes must be articulated on the record." (*Id*. at p. 1088.)

Defendants contend that the magistrate could not determine probable cause because Officer Flores failed to articulate his reasons for suspecting that the baggies were being used for an unlawful purpose. Officer Flores testified before the magistrate that when he saw the baggies he knew something was being sold and that the baggies were the type used to package drugs. However, he did not provide the foundation for this knowledge; he did not testify to any experience with drug arrests or any expertise in drug packaging. Defendants contend this lack of foundation is fatal to our finding probable cause. Defendants are mistaken.

In *Remers*, *Holt*, *Valdez* and *Huntsman* the officer observed a single container that he suspected contained contraband. Since the presence of a single, legitimate container is not inherently suspicious, detailed testimony

to establish the officer's reasonable basis for connecting this single container to criminal activity is required. Here a different case is presented. The officer did not observe a single small baggie. Instead, he saw a bundle of baggies of the type he knew to be used to package drugs. Further, he did not view this bundle in isolation, but as one piece of a suspicious picture. There were four males from Los Angeles sitting in a car on a residential street in Sacramento, in an area known for high drug traffic. Only one had identification. They were miles away from their purported destination and had been observed engaging in suspicious behavior, ducking up and down. In these circumstances the bundle of baggies was inherently suspicious.

We recognize that California courts have traditionally been skeptical of the "high crime factor" in determining probable cause. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 478-479 [198 Cal.Rptr. 538, 674 P.2d 240]; *People* v. *Loewen* (1983) 35 Cal.3d 117, 124 [196 Cal.Rptr. 846, 672 P.2d 436]; *People* v. *Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].) ■ However, after the passage of Proposition 8 in 1982, we must resolve search and seizure issues by determining whether the evidence should be excluded under federal standards. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) Under federal law, "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely. [Citations.]" (*United States* v. *Rickus* (3d Cir. 1984) 737 F.2d 360, 365.) Although Officer Flores provided no foundation for his assertion that the area was known for high drug activity, this evidence was not disputed and no further evidence was required. (*People* v. *King* (1989) 216 Cal.App.3d 1237, 1241 [265 Cal.Rptr. 370].) The fact that a detention occurs in a high crime area may contribute to probable cause if it is relevant to the officer's belief that the suspect is involved in criminal activity. (*Ibid.*) Here the fact that Caselli Circle was known as an area of high drug activity was directly tied to Officer Flores's belief defendants were involved in illegal drug sales. This fact also further distinguishes *Huntsman, supra*, where the officers tried to rely on the area's reputation for prostitution to support a seizure of a plastic bag used in drug activity. (152 Cal.App.3d at p. 1079.) When combined with the defendants' conduct in this high drug activity area, the bundle of baggies was inherently suspicious.

■ There was no need for a foundation explaining the basis of Officer Flores' suspicions about the bundle of baggies. We believe a "man of reasonable caution" would be warranted in the belief there might be illegal drugs present where there are four men acting sufficiently suspicious to have aroused citizen concern, parked for no apparent reason in a high drug area and possessing a large quantity of materials used to package drugs. The totality of the suspicious circumstances provided sufficient evidence to

support the magistrate's finding that Officer Flores had probable cause to believe the car contained drugs. The motions to suppress were properly denied.

## DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., and DeCristoforo, J., concurred.

Appellants' petitions for review by the Supreme Court were denied August 15, 1990.