Filed 4/28/14  P. v. Bailey CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TOY LATESE BAILEY,<br><br>Defendant and Appellant. | E058100<br><br>(Super.Ct.No. FSB1104924)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed in part, remanded with directions in part.

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Toy Latese Bailey pled guilty to transportation of a controlled substance for sale (Health & Saf. Code, § 11379, subd. (a)); possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a)); and resisting a peace officer (Pen. Code, § 148, subd. (a)). In return, defendant was placed on probation for a period of 36 months with various terms and conditions. On appeal, defendant contends that (1) the trial court erred in denying her suppression motion; and (2) the matter must be remanded because the trial court failed to calculate and award applicable presentence custody credits. We agree that the matter must be remanded to allow the court to calculate defendant's presentence custody credits.

I

FACTUAL BACKGROUND[1]

On July 20, 2011, at around 3:00 p.m., Redlands Police Officer Daniel Sardegna and his partner were on duty when they initiated a traffic stop on a vehicle driven by defendant for speeding and illegally tinted windows. When Officer Sardegna approached the vehicle, the officer could not see inside the vehicle. Defendant rolled down her window to her neckline, and Officer Sardegna asked defendant to roll it down further so he could safely see where her hands were placed. Defendant initially failed to comply but eventually did so.

---

[1] The factual background is taken from the suppression hearing.

Officer Sardegna asked defendant for her identification and vehicle registration. Defendant provided the officer with her vehicle registration and then began to look for her identification. Defendant fumbled in her purse, which was located on the front passenger seat; the center console; and then in the car's glove box in an attempt to locate her identification. During this time, defendant's voice trembled, she seemed reluctant to answer questions, raised her voice, and generally exhibited an attitude toward the officer. After about two minutes, Officer Sardegna asked defendant for her name and date of birth so he could run it in his computer to see if defendant had a valid driver's license. The officer also asked defendant to exit the vehicle because he did not feel safe with her sitting in the vehicle. Officer Sardegna explained that defendant's initial refusal to roll down the window, her strange demeanor, and because he could not see inside the vehicle all caused him to feel the situation would be better controlled with defendant out of the car.

After questioning the officer as to why she had to exit the vehicle, defendant swung the door open and looked down at the floorboard. Defendant again began to argue with the officer and was reluctant to get out of the vehicle. As defendant stepped out from the vehicle, Officer Sardegna saw a red clear one-inch by one-inch plastic baggie on the floorboard on the driver's side. Defendant placed her foot on the baggie and tried to slide it under the seat as she exited the vehicle. Defendant then "dove back into the driver's seat" and wrapped her arms around the seatbelt and headrest. While holding onto the car, defendant screamed profanities and demanded to know the reason for her

3

arrest. Officer Sardegna grabbed defendant by her arm and told her that she needed to exit the vehicle. Based on his training and experience, Officer Sardegna believed the baggie to be associated with narcotics packaging and that the baggie contained controlled substances.[2]

Other officers arrived to assist Officer Sardegna. Officer Sardegna told defendant to let go of the headrest and to stop resisting. Defendant cursed at the officers and said that she was pregnant and that they were hurting her. After a few minutes, the officers pried defendant's hands from the headrest, untangled them from the seat belt, and placed her in handcuffs. The officers escorted defendant to the back of the vehicle and had her sit on the curb. The officers also called paramedics because defendant had claimed she was pregnant.[3] Officer Sardegna asked defendant if she had any form of identification and whether he could look inside the vehicle for her identification. Defendant responded that she did not know, cursed at the officer, and did not give a "good response."

Officer Sardegna thereafter searched inside the vehicle for defendant's identification and told his partners that he also believed the vehicle contained narcotics. Defendant's open, unzipped purse was on the passenger seat near the center console with the contents on the seat and hanging outside the purse. Officer Sardegna observed other similar red one-inch baggies in defendant's open purse near a black makeup bag. Officer

---

[2] Officer Sardegna acknowledged that when he later retrieved the baggie from the driver's side floorboard it was empty.

[3] Defendant was not pregnant and had falsely claimed to be.

4

Sardegna looked inside defendant's purse but did not find defendant's identification. Meanwhile, Officer Sardegna's partner, Officer Liu, removed the makeup bag from the purse. Officer Sardegna told him to look inside the bag for defendant's identification. Officer Liu opened the makeup bag and removed several baggies matching the one Officer Sardegna saw on the driver's side floorboard.[4] The baggies contained methamphetamine. The makeup bag also contained two glass pipes, a digital scale, and a day planner. Defendant was thereafter placed under arrest.

## II

## DISCUSSION

A.  *Motion to Suppress*

The trial court twice denied defendant's suppression motion, finding the officers had probable cause to search the vehicle based on the totality of the circumstances relating to defendant's actions, the presence of the baggie on the driver's side floorboard, defendant's active attempt to conceal it, and Officer Sardegna's training and experience.[5]

---

[4]  Officer Liu, who was called as a defense witness, testified that he believed defendant's purse was zipped up. Officer Liu also stated that he opened the black makeup bag after he found defendant's wallet which contained defendant's driver's license. Officer Liu explained that after he showed Officer Sardegna defendant's driver's license, Officer Sardegna told Officer Liu to look in the makeup bag because he believed the vehicle contained narcotics. However, Officer Liu acknowledged that he did not write a report at the time of the incident, which occurred one year and three months prior to the suppression hearing.

[5]  The trial court invited defendant to present authority to support a contrary ruling and set a hearing for reconsideration of its ruling. Following supplemental briefing and hearing further argument, the court denied defendant's motion to reconsider the denial of the motion to suppress evidence. The court, in upholding its earlier ruling, expressly

*[footnote continued on next page]*

Defendant argues that the trial court erred in denying her suppression motion because there was no justification to search defendant's makeup bag without a warrant.

In reviewing the denial of a motion to suppress evidence, we defer to the trial court's express or implied factual findings where supported by the evidence and exercise our independent judgment in determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.) "The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. . . . [I]t becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People v. Lawler* (1973) 9 Cal.3d 156, 160, fn. omitted.)

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." However, "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." (*Florida v. Jimeno* (1991) 500 U.S. 248, 250.)

The Fourth Amendment prohibits seizures of persons, including brief investigative detentions, when they are "'unreasonable.'" (*People v. Souza* (1994) 9 Cal.4th 224, 229.)

---

*[footnote continued from previous page]*
found that defendant's attempted concealment of the baggie suggested its use for an illegal purpose. The court also noted the baggie's unusual size and ruled it was reasonable for Officer Sardegna to rely on his training and experience to suspect the baggie was drug packaging.

In order to pass constitutional muster, a detention must be "based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity." (*Id*. at p. 230.) Thus, as specific to a vehicle stop, "a police officer can legally stop a motorist only if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926, italics omitted.) Here, it is undisputed that Officer Sardegna lawfully stopped defendant for traffic violations.

Warrantless searches, although usually per se unreasonable, are considered reasonable in various contexts. (*Katz v. United States* (1967) 389 U.S. 347, 357.) The warrantless search of an automobile, for instance, can be justified on a variety of grounds, among them: (1) probable cause to believe the car contains contraband (*Carroll v. United States* (1925) 267 U.S. 132, 149); (2) the search is incident to the arrest of an occupant of the vehicle (*New York v. Belton* (1981) 453 U.S. 454, 460, overruled on another ground in *Arizona v. Gant* (2009) 556 U.S. 332, 343); and (3) the search is part of the inventory of a lawfully impounded vehicle (*South Dakota v. Opperman* (1976) 428 U.S. 364, 375-376).

Under the automobile exception to the Fourth Amendment's prohibition against warrantless searches, a vehicle, because of its mobility, may be searched without a warrant when police have probable cause to believe it contains contraband. (*Maryland v. Dyson* (1999) 527 U.S. 465, 466-467.) "The probable cause determination 'must be based on objective facts that could justify the issuance of a warrant by a magistrate and

not merely on the subjective good faith of the police officers.' [Citation.] 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' [Citation.]" (*People v. Carvajal* (1988) 202 Cal.App.3d 487, 497.) The probable cause standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Illinois v. Gates* (1983) 462 U.S. 213, 243, fn. 13.)

The fact that the contraband was found in a closed makeup bag located in defendant's purse does not alter the validity of the search for Fourth Amendment purposes. "'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search.' [Citation.] And our later cases describing [(*United States v.*] *Ross* [(1982) 456 U.S. 798)] have characterized [this rule] as applying broadly to *all* containers within a car . . . ." (*Wyoming v. Houghton* (1999) 526 U.S. 295, 301.) "Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container" (*United States v. Ross*, *supra*, 456 U.S. at p. 820, fn. omitted), and all such containers that would be subject to search under a warrant (see *ibid*.) may be searched under the automobile exception to the warrant requirement as well. The "scope of the warrantless search authorized by [the automobile] exception is no broader and no narrower than a magistrate could legitimately authorize by warrant." (*Id*. at p. 825.)

Our Supreme Court has also stated that "[l]aw enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]'" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299, citing *United States v. Arvizu* (2002) 534 U.S. 266, 273.) This is consistent with what the United States Supreme Court held in *Ornelas v. United States* (1996) 517 U.S. 690, 700: A "police officer may draw inferences based on his own experience in deciding whether probable cause exists."

As explained by *People v. Nonnette* (1990) 221 Cal.App.3d 659, 666: "Courts have held that certain containers are so distinctive in nature that an officer may, based on his [or her] experience with such containers in previous arrests, have probable cause to search or seize such a distinctive container in plain view. Examples of such containers are paper bindles (*People v. Lilienthal* (1978) 22 Cal.3d 891, 898-890 [150 Cal.Rptr. 910, 587 P.2d 706]; *People v. Clayton* (1970) 13 Cal.App.3d 335, 337-338 [91 Cal.Rptr. 494]), heroin balloons (*People v. Lee* (1987) 194 Cal.App.3d 975, 984 [240 Cal.Rptr. 32]), and brick-shaped packages smelling like marijuana. (*People v. McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].) However, where the container is a common one with legitimate purposes, its presence is not enough to establish probable cause. (*Remers v. Superior Court* (1970) 2 Cal.3d 659, 662-663 [87 Cal.Rptr. 202, 470 P.2d 11] [tinfoil package]; *People v. Holt* (1989) 212 Cal.App.3d 1200, 1206-1207 [261

Cal.Rptr. 89] [foil-wrapped package]; *People v. Valdez* (1987) 196 Cal.App.3d 799, 806-807 [242 Cal.Rptr. 142] [film canister].)"

The *Nonnette* court further explained, "'. . . whether a common container constitutes a suspicious circumstance, capable of contributing to the totality of circumstances necessary for probable cause, depends on the total factual context in which the container is observed, including the prior experience of the observing officer with containers of the sort at issue . . . .'" (*People v. Nonnette*, *supra*, 221 Cal.App.3d at p. 667.) "Since the presence of a single, legitimate container is not inherently suspicious, detailed testimony to establish the officer's reasonable basis for connecting this single container to criminal activity is required." (*Id*. at pp. 667-668.) In *Nonnette*, the officer saw not one baggie, but several baggies of the type he knew to be used to package drugs. He also saw four men ducking down in a car in an area known for high drug traffic. Altogether this constituted probable cause to justify issuance of a search warrant for the car. (*Id*. at pp. 668-669.)

Here, Officer Sardegna testified that he saw a small baggie in plain view on the driver's side floorboard; that defendant had attempted to conceal the baggie; and that the baggie resembled those used in drug trafficking. In addition, after defendant realized Officer Sardegna had seen the baggie, defendant dove back into the car and resisted the officers. Though the one-inch by one-inch baggie is not peculiar, the trial court here noted its unusual size as well as the officer's training and experience in identifying the baggie to be the type often used to traffic drugs. Moreover, although defendant was

stopped for traffic violations, her behavior at the time of the stop together with the presence of the baggie in plain view and defendant's attempts to conceal it significantly altered the situation and gave Officer Sardegna a reasonable belief that there may have been narcotics in the baggie and elsewhere in the vehicle. The circumstances established probable cause to search the vehicle for narcotics-related contraband.

The facts in *People v. Lilienthal*, *supra*, 22 Cal.3d 891 also support the trial court's denial of defendant's suppression motion. In *Lilienthal*, the police stopped the defendant for a traffic violation. (*Id*. at p. 898.) The defendant got out of his car as the officer approached and asked to see his driver's license. As the defendant fumbled through his wallet, "a neatly folded squared piece of paper fell from his wallet to the ground." (*Ibid*.) The defendant immediately placed his foot over the piece of paper. The officer suspected that the paper contained narcotics and asked the defendant to step back from it so he could examine it. The officer testified that his suspicion was based on his experience in making numerous narcotics arrests where cocaine or heroin was transported in paper bindles similar to the one dropped by the defendant. (*Ibid*.) After finding in the packet a white powdery substance which he suspected to be either heroin or cocaine, the officer looked through the defendant's wallet and found another similar paper packet containing the same white powdery substance. (*Ibid*.)

Upholding the search in *Lilienthal*, the Supreme Court focused on the officer's testimony that his suspicion that the paper contained narcotics "was based on his experience in making numerous arrests where cocaine or heroin was transported in paper

11

bindles similar to the one dropped by [the] defendant.  Reasonable grounds for believing a package contains contraband may be adequately afforded by the package's shape, design, and the manner in which it is carried.  (*People v. McKinnon* (1972) 7 Cal.3d 899, 917 [103 Cal.Rptr. 897, 500 P.2d 1097].)  We conclude that a prudent man of Officer Brookbush's experience could reasonably believe that the distinctively folded paper that fell from defendant's wallet contained contraband.  [Citations.]" (*People v. Lilienthal*, *supra*, 22 Cal.3d at pp. 898-899.)

Defendant argues that because there was no plain view of the contents of the closed makeup bag, under *Lilienthal*, the search was not permissible, and suggests there must be an independent basis to search each container within the vehicle.  Defendant's argument is flawed because once probable cause is established to search a lawfully stopped vehicle, "it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." (*United States v. Ross*, *supra*, 456 U.S. at pp. 800, 825, italics added.)  Courts have characterized this rule "as applying broadly to *all* containers within a car." (*Wyoming v. Houghton*, *supra*, 526 U.S. at p. 301.)

Relying on *People v. Huntsman* (1984) 152 Cal.App.3d 1073, defendant also asserts that there was nothing particularly incriminating about the plastic baggie observed here.  In *Huntsman*, the officers observed two men behind a vehicle in a parking lot located in a high prostitution area.  One of the men was holding a large Ziploc bag, but the officers were unable to see whether the bag contained anything.  One of the men was looking around, and when the officer's unmarked vehicle approached, the men slammed

the trunk lid closed and walked away. (*Id.* at p. 1079.) The court held that where probable cause to search is based on an officer's observation of the defendant holding a container that is commonly used for innocent purposes, the People must present evidence indicating the specific basis for the officer's suspicion that the container holds contraband or evidence of a crime. (*Id.* at pp. 1078, 1084.)

The court in *People v. Nonnette*, *supra*, 221 Cal.App.3d 659, distinguishing its prior holding in *Huntsman*, explained: "Of primary concern was the lack of foundational testimony linking the bag with an illicit purpose, which would have made the officer's sighting of defendant holding the bag a suspicious circumstance contributing to probable cause. We noted that the officer's testimony did not indicate any expertise in determining whether such bags may contain contraband or any experience with such bags in prior narcotic arrests. [Citation.] . . . Accordingly, we hold that, in order to permit judicial review of the legality of a detention, arrest, or search, an officer's reasons for suspecting that a common container is being used for unlawful purposes must be articulated on the record.' [Citation.]" (*People v. Nonnette, supra,* at p. 667.)

Here, contrary to *Huntsman*, Officer Sardegna testified that he had training and experience related to narcotics packaging and drug sales and that he personally knew that small one-inch baggies such as the one he observed were used to hold narcotics. The red one-inch by one-inch baggie, though possessing some legitimate uses, was described as unusual. Additionally, unlike the officer in *Huntsman*, Officer Sardegna saw defendant concealing the baggie as well as other similar baggies on top of defendant's open purse

13

near the makeup bag. Moreover, in this case there was more than just appearance of the baggie: defendant was nervous, fumbling through her purse, and resisting even though the officer simply asked for her driver's license.

For these reasons, we conclude that the trial court did not err when it denied defendant's motion to suppress.

B.    *Custody Credits*

The probation report noted that defendant had served a total of four days in custody: two days from July 20, 2011 to July 21, 2011, and two days from November 17, 2011 to November 18, 2011. At the time of sentencing, in regard to custody credits, the trial court mentioned "new [section] 4019," but failed to calculate or award any specific number of presentence custody credits. Defendant argues that the matter must be remanded to allow the trial court to calculate and award applicable credits.

The People respond that pursuant to Penal Code section 4019, subdivision (e), defendant is not entitled to any custody credits because the probation report notes defendant served a total of four days in custody, not the required six days. The People are mistaken. The People incorrectly rely on the former version of section 4019, subdivision (e), which was effective 2009 to 2010, to support their position. Former section 4019, subdivision (e), provided: "(e) No deduction may be made under this section unless the person is committed for a period of six days or longer." (Stats. 2009-2010, 3rd Ex.Sess., ch. 28, § 50, eff. Jan. 25, 2010.) However, defendant committed her crime in 2011 and served time in custody in 2011. During this time period, section 4019,

subdivision (e), stated: "(e) No deduction may be made under this section unless the person is committed for a period of four days or longer." (Stats. 2011, ch. 15, § 482 (A.B. 109), eff. Apr. 4, 2011.)

In any event, the People are also mistaken because the trial court here failed to award any custody credits to defendant at the time of sentencing. Penal Code section 4019 merely sets limits on conduct credits, not all presentence custody credits.

"A criminal defendant is entitled to accrue both actual presentence custody credits . . . and conduct credits . . . for the period of incarceration prior to sentencing." (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 395.) "[C]ustody credits are constitutionally required and awarded automatically on the basis of time served." (*Id*. at p. 396.) "[I]t is the duty of the sentencing court to calculate actual days spent in custody pursuant to [Penal Code] section 2900.5, subdivision (d)." (*People v. Thornburg* (1998) 65 Cal.App.4th 1173, 1175-1176, disapproved on other grounds in *People v. Buckhalter* (2001) 26 Cal.4th 20, 40.) "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647; *People v. Acosta* (1996) 48 Cal.App.4th 411, 428, fn. 8 ["The failure to award an adequate amount of credits is a jurisdictional error which may be raised at any time."].) "[C]redit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." (Pen. Code, § 2900.5, subd. (b).)

15

Here, the trial court failed to calculate any presentence custody credits.  As such, we will remand the matter and direct the trial court to calculate and award presentence custody credits to which defendant is entitled.

## III

## DISPOSITION

The matter is remanded to the trial court with directions to calculate and award presentence custody credits to which defendant is entitled.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ  
                   P. J.

We concur:


McKINSTER  
     J.


KING  
     J.

16