[No. E018537. Fourth Dist., Div. Two. Apr. 16, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY DWAYNE RITTER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the part entitled "Penal Code Section 1385."

**COUNSEL**

Stuart A. Skelton, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Warren P. Robinson and Karla Davis, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—A jury found defendant was guilty of possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)) and that prior strike allegations were true. The court sentenced him to state prison for 25 years to life. He appeals, contending the trial court erroneously denied his suppression motion (Pen. Code, § 1538.5) and the case should be remanded to give the trial court the opportunity to exercise its discretion to dismiss a prior strike conviction pursuant to *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628]. Defendant's contentions lack merit.

### PENAL CODE SECTION 1538.5

*The Suppression Hearing:*

Defendant contends the trial court erroneously denied his motion to suppress evidence seized following a warrantless search of a "fanny pack" that he had removed from his waist. (Pen. Code, § 1538.5.) We disagree.

At the hearing on the suppression motion, a San Bernardino County Sheriff's deputy testified that he was on duty when, at approximately 5:07 p.m. on September 8, 1995, he received a 911 call reporting a disturbance. The deputy was informed the disturbance stemmed from a dispute over money and a man wearing a black fishing-type hat, red shirt and black jeans "was threatening."

When the deputy arrived at the scene, a woman was urgently pointing southward down the street. Looking southward, the deputy saw defendant walking away. He was wearing a red shirt, black jeans and a black hat. Driving behind defendant, the deputy honked his horn. Defendant stopped and turned around. While getting out of his patrol car, the deputy explained he was investigating a reported disturbance involving defendant. Defendant responded there was no problem and the deputy should check with the other parties. The deputy asked a backup officer to go and talk to the complainant while he remained with defendant.

While the deputy and defendant waited, the deputy began looking defendant over because "the call had stated he 'was threatening.'" Nothing appeared to be concealed under defendant's T-shirt, but he was wearing a black

fanny pack that had several compartments and seemed to be fairly full. The "nylon top outer compartment was stretched sufficiently tight at that time to reveal to [the deputy] what appeared to be the outline of a small handgun."

After the deputy asked defendant what was in his pack and whether he had any weapons, he became evasive. They were standing "face-to-face . . . at approximately arm's reach or slightly more than that" at the front corner of the deputy's patrol car. The deputy asked defendant to put the pack on the hood of the patrol car, but defendant put it on the ground, to his right and slightly behind him. Then, he stepped away from the fanny pack. The deputy "became concerned as to what exactly was going on . . . . For [his] safety, [the deputy] felt it important that [he] move [defendant] away from that fanny pack, and [he put defendant ] in the back of the patrol car and went back to the fanny pack." Putting the pack on the hood of the patrol car, the deputy unzipped the outer compartment and retrieved a handgun.

During cross-examination, defense counsel asked the deputy to place the handgun in the pack. The deputy placed the gun in the outer compartment of the bag and zipped the bag closed with the exhibit tag hanging out. With the court's permission, defendant put on the bag and the deputy adjusted its contents. The deputy explained he had seen "a vertical outline, barrel lines [and] a horizontal outline pointing to [defendant's] left, which gave . . . the impression of an L-shape, which is generally the shape of a handgun, being the grip and the frame and the slide." The deputy testified that, based on his experience, he saw a definitive outline of a handgun.

On cross-examination, the deputy also testified that defendant did not give consent to look inside the fanny pack, that he was seated in the patrol car when the deputy unzipped the pack, that defendant was not under arrest at the time, that there was no emergency situation at the particular minute the pack was unzipped, that the deputy understood he "seized" the pack when he picked it up from the ground, that he believed if he let the pack out of his possession it would disappear, and that he "had to open it to confirm what [he] believed"—that there was a gun inside.

Challenging only the search, defense counsel argued the evidence should be suppressed because none of the exceptions to the warrant requirement applied and a *Terry* search incident to a detention is limited to a patdown of a suspect's outer clothing in an attempt to discover weapons.[2]

The prosecutor argued a *Terry* analysis was proper because this was a plain view situation where the deputy, based on his experience, was able to

---

[2]*Terry* v. *Ohio* (1968) 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889].

see an outline that was consistent with a gun and was justified in ascertaining whether it was a gun before continuing his investigation; the deputy took the least intrusive means available in the circumstances; and, because defendant's responses raised the deputy's concerns for his safety, he placed defendant in the patrol car and unzipped the compartment which contained the handgun.

The court and counsel agreed that a patdown of the fanny pack would have been proper if defendant had not removed it. But, defense counsel argued, *Terry* was inapplicable because defendant had removed the pack and it was in the exclusive control of the deputy. Concluding the deputy acted reasonably within the meaning of *Terry* v. *Ohio*, *supra*, 392 U.S. 1, the trial court denied defendant's suppression motion.

*Standard of Review*:

■ In reviewing defendant's Penal Code section 1538.5 motion, we are bound by the trial court's factual findings, whether express or implied, if they are supported by substantial evidence. However, we review questions of law independently to determine whether the challenged search or seizure meets constitutional standards of reasonableness. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436]; *People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961].) Since the adoption of Proposition 8 in 1982, unlawfully obtained relevant evidence is properly excluded only if the United States Constitution requires exclusion. (*In re Lance W.* (1985) 37 Cal.3d 873, 885-889 [210 Cal.Rptr. 631, 694 P.2d 744].)

*Discussion*:

■ On appeal, defendant argues the court misconstrued the holding in *Terry* v. *Ohio*, *supra*, 392 U.S. 1, because after he removed the fanny pack and the risk was eliminated, the search was no longer justified as a safety measure. Citing *Michigan* v. *Long* (1983) 463 U.S. 1032 [103 S.Ct. 3469, 77 L.Ed.2d 1201], the People respond the search was a permissible extension of a *Terry* preventive search for weapons. In our view, the People have the better argument.

In *Terry* v. *Ohio*, *supra*, 392 U.S. 1, the Supreme Court examined the validity of a "stop and frisk" in the absence of probable cause and a warrant. The officer in *Terry* had detained several suspects to ascertain their identities after observing them for a brief period of time and forming the conclusion they were about to engage in criminal activity. Because the officer feared the

suspects were armed, he patted down the outside of their clothing and discovered two revolvers. (392 U.S. at pp. 5-7 [88 S.Ct. at pp. 1871-1872].)

Examining the reasonableness of the officer's conduct, the Supreme Court held there is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' " (392 U.S. at p. 21 [88 S.Ct. at p. 1879].) Although the officer's conduct involved "a severe, though brief, intrusion upon cherished personal security" (392 U.S. at pp. 24-25 [88 S.Ct. at pp. 1881-1882]), the *Terry* court found the conduct was reasonable when the interest of the individual was weighed against the legitimate interest in crime prevention and detection (392 U.S. at p. 22 [88 S.Ct. at p. 1880]) and the "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest." (392 U.S. at p. 24 [88 S.Ct. at p. 1881].)

When an officer has a reasonable belief "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (392 U.S. at p. 24 [88 S.Ct. at p. 1881].)

Although, as defendant argues, *Terry* involved the patdown of a person, the *Terry* court was careful to point out that it was "not develop[ing] at length . . . the limitations which the Fourth Amendment places upon a protective seizure and search for weapons. These limitations will have to be developed in the concrete factual circumstances of individual cases." (392 U.S. at p. 29 [88 S.Ct. at p. 1884]; see, e.g., *People* v. *Brisendine* (1975) 13 Cal.3d 528, 542-543 [119 Cal.Rptr. 315, 531 P.2d 1099] [circumstances justified extending *Terry* limits to include opening knapsack so resistant or resilient that a pat down of its exterior proved insufficient to disclose whether interior contained weapons].)

In *Michigan* v. *Long, supra,* 463 U.S. 1032, the United States Supreme Court held that *Terry* does not restrict a preventive search to the person of a detained suspect even when the detainee is under the control of the officer and cannot gain access to weapons. (463 U.S. at p. 1047 [103 S.Ct. at pp. 3479-3480].) The *Long* court concluded it was reasonable under *Terry* to allow officers to conduct an area search of the passenger compartment of a vehicle to uncover weapons, as long as the officers possess an articulable and objectively reasonable belief that the suspect is potentially dangerous. (463 U.S. at pp. 1049-1051 [103 S.Ct. at p. 3481].) Otherwise, the suspect

may break away from police control or may be permitted to reenter the vehicle and retrieve a weapon before the *Terry* investigation is over. (463 U.S. at pp. 1051-1052 [103 S.Ct. at pp. 3481-3482].) The *Long* court stressed that an officer remains particularly vulnerable during *Terry* investigations because of the close range and the necessity for a " 'quick decision as to how to protect himself and others from possible danger . . . .' " (*Michigan* v. *Long, supra,* 463 U.S. 1032, 1052 [103 S.Ct. 3469, 3482], quoting *Terry* v. *Ohio, supra,* 392 U.S. 1, 28 [88 S.Ct. 1868, 1883].) "In such circumstances, [the Supreme Court has] not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter." (*Michigan* v. *Long, supra,* 463 U.S. 1032, 1052 [103 S.Ct. 3469-3482], fn. omitted.)

The case before us, like *Terry* and *Long,* involved necessarily swift action predicated upon on-the-spot observations that could not be subjected to the warrant procedure. (*Terry* v. *Ohio, supra,* 392 U.S. 1, 20 [88 S.Ct. 1868, 1879]; *Michigan* v. *Long, supra,* 463 U.S. 1032, 1052 [103 S.Ct. 3469, 3482].) During an ongoing, on-the-street, close range investigation of a report of defendant's threatening conduct, the deputy observed what he suspected was the outline of a handgun in the outer compartment of defendant's fanny pack. After the deputy's concerns for his safety were heightened by defendant's responses to the deputy's questions and request regarding the fanny pack, the deputy searched the compartment of the pack that he believed contained a weapon. Given the fact that the intrusion was "strictly circumscribed by the exigencies which justifi[ed] its initiation" (*Terry* v. *Ohio, supra,* 392 U.S. at p. 26 [88 S.Ct. at p. 1882]), the deputy's prudence should not be faulted for a failure to pat down the fanny pack while defendant was wearing it. Balancing the intrusion against the governmental interest in neutralizing the threat of physical harm to the deputy while he continued the investigation, we hold the search was an objectively reasonable preventive measure.

In view of the foregoing, we conclude the deputy did not act unreasonably in taking preventive measures to ensure that there were no weapons within defendant's immediate grasp during the ongoing investigation of the reported disturbance. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 19 [88 S.Ct. at p. 1878] [central inquiry under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security"].) In these circumstances, the trial court properly denied defendant's Penal Code section 1538.5 motion.

PENAL CODE SECTION 1385*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

McKinster, J., and Richli, J., concurred.

A petition for a rehearing was denied May 2, 1997.

---

*See footnote, *ante*, page 274.