Filed 3/23/22  P. v. Castillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT CASTILLO, JR.,<br><br>    Defendant and Appellant. | H049258<br>(Santa Cruz County<br>Super. Ct. No. 20CR03062) |

Defendant Robert Castillo, Jr., pleaded no contest to being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1))[1] and illegally possessing ammunition (§ 30305, subd. (a)(1)) and was placed on two years' felony probation.  On appeal, he argues that the trial court erred by denying his motion to suppress evidence of a gun and ammunition that was found after police officers searched a blanket that he had been lying on.  We conclude that the trial court did not err in finding that the officers conducted a weapons search based on their reasonable belief that Castillo was dangerous.  We affirm the judgment.

---

[1] Unspecified statutory references are to the Penal Code.

## I. BACKGROUND

### A. *The Information*

On September 30, 2020, Castillo was charged by information with being a felon in possession of a firearm (§ 29800, subd. (a)(1); count 1) and illegally possessing ammunition (§ 30305, subd. (a)(1); count 2).

### B. *The Testimony at the Hearing on the Motion to Suppress*

In December 2020, Castillo filed a motion to suppress (§ 1538.5), which the People opposed. The following month, the trial court held a hearing on the motion. During the hearing, Santa Cruz County Sheriff's Office Deputy Christopher Medina testified that he was on duty at around 2:00 a.m. on June 28, 2020. He was conducting an area check of a neighborhood near a bluff close to a beach that was known for marijuana smoking and illegal parking.

That evening, Deputy Medina was with two other officers, Deputy Galindo and Deputy Munoz, when he saw an unoccupied car parked next to a no-parking sign near the bluff. The sign said that parking was prohibited between 10:00 p.m. and 6:00 a.m. Approximately 15 to 20 yards away from the car, he saw a propane tank blowing flames "like a heater" and two people lying down on a blanket. As he got closer, Deputy Medina saw a woman and a man, later identified as Castillo. Deputy Medina also saw at least two "tall can[s] of beer type alcohol" and something that looked like a marijuana pipe on the ground within arm's reach of Castillo. At no time did Deputy Medina observe Castillo smoke marijuana, and he did not smell any burnt marijuana in the area.

Deputy Medina told Castillo and the woman that they could not be on the bluff in the middle of the night and that the park was closed. He also told Castillo and the woman that they could not have a propane heater because of the fire danger. The woman responded, " 'Okay.' " Castillo replied, " 'All right. Well, well, I'll dismantle it right now and be on my way.' "

2

Deputy Medina asked Castillo if the parked car was his, and he answered yes. Deputy Medina then asked Castillo for his driver's license or other identification, and Castillo told him that he did not have either. Castillo, however, gave officers his driver's license number. Castillo remained lying down on his stomach on top of the blanket as he spoke with officers. Deputy Medina felt concerned for his own safety because there were objects that were already strewn on the ground, Castillo remained lying on the blanket, Castillo was wearing baggy clothing, the presence of Castillo's companion, and the lateness of the hour. Based on his experience, Deputy Medina considered it unusual for Castillo to remain lying on his stomach while talking to him.

Deputy Medina asked Castillo for his date of birth, and Castillo answered that he had "multiple date[s] of birth[]." Deputy Munoz asked Castillo where he was from, and Castillo initially responded that he was from "the violent part of Watsonville." Castillo then apologized and later said that he was from the "center of Watsonville." Deputy Medina asked Castillo to sit up, and another officer told Castillo that the officers wanted him to do so because they were concerned for their safety. Castillo did not comply with the officers' request. Castillo was asked to hand over his marijuana pipe, but he refused to do so. An officer then asked Castillo if he had a "weed pipe," and Castillo responded that it could be a "tobacco pipe." Deputy Munoz asked Castillo to sit up again. At that point, Castillo then offered to hand over the marijuana pipe. Deputy Munoz told Castillo it was too late.

Thereafter, the officers detained Castillo due to his lack of cooperation and a concern for officer safety and placed him in handcuffs. Deputy Medina testified that at the time Castillo was detained, he could have cited him for illegal parking and for having open containers in public. The officers pat searched Castillo and walked him over to a bench approximately four or five feet away from the blanket. Shortly afterwards, Deputy Munoz checked the blanket that Castillo had been lying on and found a firearm.

3

During the entire police encounter, Castillo did not act in an overtly threatening manner or show signs of aggression toward the officers.[2]

C. *Arguments on the Motion to Suppress*

The People argued that the officers had a valid basis to detain Castillo because his car had been illegally parked. Moreover, officers saw either a marijuana or tobacco pipe and open containers of alcohol, and Castillo had apparently been driving without a valid driver's license. The People claimed that officers were validly concerned for their safety when they detained Castillo, which justified searching the blanket. Castillo had been lying on his stomach talking to officers, which was a little "weird." It was also dark, there was "paraphernalia" around, and Castillo had not been complying with the officers' commands. Castillo was also evasive when answering questions about his date of birth and where he lived. Although Castillo was placed on a bench after he was detained, he could have lunged over and reached the blanket.

Castillo argued that at most, officers could have cited him for an infraction for illegal parking or for not carrying a license. Therefore, officers could not have validly conducted a search because there was no arrest and officers could not conduct a search incident to a citation. The open alcohol containers were empty, and nobody had seen him drink alcohol. Castillo had a marijuana pipe nearby, but officers did not smell marijuana or see him smoking. Finally, Castillo argued that officers did not find anything when

---

[2] A video of Castillo's interactions with the officers was taken using Deputy Medina's body-worn camera. The video was admitted into evidence and played for the trial court. Defense counsel prepared a transcript of the video, but the transcript was not admitted into evidence. Exhibits that are admitted into evidence are part of the normal record on appeal, but "may be transmitted to the reviewing court only as provided in [California Rules of Court,] rule 8.224." (Cal. Rules of Court, rule 8.320(e).) None of the parties have requested that the video exhibit be transmitted to this court under California Rules of Court, rule 8.224.

4

they conducted a pat search, and there was nothing during his interactions with the officers that would indicate that he would lunge and grab a weapon under the blanket.

D. ***The Ruling on the Motion to Suppress***

On January 25, 2021, the trial court issued a written order denying Castillo's motion to suppress. The trial court first addressed Castillo's detention, concluding that there were multiple circumstances justifying the officers' reasonable suspicion that he was involved in criminal activity: (1) Castillo was in an area known for frequent illegal activities at 2:00 a.m.; (2) Castillo's car was illegally parked; (3) Castillo admitted that he was planning to drive and had possibly driven a car without having a license in his possession in violation of Vehicle Code section 12951; (4) Castillo was evasive in both his behavior and his responses to questioning, and he appeared to be hiding something underneath him; (5) Castillo had alcohol cans around him, indicating that he may have been possessing an open container in a public space, and (6) Castillo had something that resembled a marijuana pipe, which suggested that he may have been unlawfully smoking marijuana in a public place. Considering the totality of the circumstances, the trial court found that the officers' investigative detention was lawful.

Next, the trial court addressed the legality of Castillo's search. The trial court found that there were specific and articulable facts, taken together with rational inferences from those facts, that supported a limited search for weapons under the blanket that Castillo had been lying on. The trial court noted that Castillo remained on the blanket during his encounter with officers, which made it appear as if he were trying to hide something. Moreover, Castillo was evasive and uncooperative with officers, failing to follow through on his promise to clean up the area and leave. Based on these circumstances, the trial court found that the officers could reasonably believe that Castillo might have or use a weapon, and the search of the area, including the blanket, did not violate the Fourth Amendment.

E. *The Plea and Sentence*

On July 7, 2021, Castillo pleaded no contest to being a felon in possession of a firearm (§ 29800, subd. (a)(1)) and illegally possessing ammunition (§ 30305, subd. (a)(1)). The trial court placed Castillo on two years' felony probation and ordered him to serve 270 days in county jail. The trial court waived the court security fee and court facility fee under *People v. Dueñas* (2019) 30 Cal.App.5th 1157, stayed a $300 restitution fine, and imposed and stayed a $300 probation revocation restitution fine. Castillo filed a timely notice of appeal.

## II. DISCUSSION

Castillo argues that the trial court erred by denying his motion to suppress under section 1538.5. He argues that the search of the blanket was not justified as he was being detained solely for infractions. He further argues that the search was not supported by *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*) because he was already secured by three deputies when the blanket was searched. As we explain, we find no merit in his contentions and conclude that the trial court properly denied his motion to suppress.[3]

A. *Standard of Review*

"[A] challenge to the trial court's ruling denying [a] motion to suppress presents a mixed question of law and fact that is subject to a two-tier standard of review. 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Sardinas* (2009) 170 Cal.App.4th 488, 493.)

---

[3] Below, Castillo challenged both his detention and the subsequent search. On appeal, he does not challenge his detention; he argues only that the search was invalid.

6

B. *The Search Was Valid Under* **Terry v. Ohio**

Below, the trial court expressly concluded that specific and articulable facts supported a limited search of weapons under the blanket as the officers were reasonably concerned about their safety.  We agree that the search was justified on the grounds of officer safety.

"The Fourth Amendment provides that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .' " (*Terry*, *supra*, 392 U.S. at p. 8.)  In *Terry*, the United States Supreme Court held that an officer is permitted under the Fourth Amendment to conduct a reasonable search for weapons when he or she "has reason to believe that he [or she] is dealing with an armed and dangerous individual, regardless of whether he [or she] has probable cause to arrest the individual for a crime." (*Id*. at p. 27.)  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [his or her] safety or that of others was in danger." (*Ibid*.)  Under *Terry*, an officer is permitted "to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault [the officer]." (*Id*. at p. 30.)

Although *Terry* concerned a pat search of an individual, the *Terry* court declined to expound on "the limitations which the Fourth Amendment places upon a protective search and seizure for weapons." (*Terry*, *supra*, 392 U.S. at p. 29.)  *Terry* explained that "limitations will have to be developed in the concrete factual circumstances of individual cases." (*Ibid*.)

The United States Supreme Court in *Michigan v. Long* (1983) 463 U.S. 1032 (*Long*) held that *Terry* permitted officers to search a passenger compartment inside of a car for weapons, "as long as [the officers] possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." (*Id*. at p. 1051.)  The officers

7

searched the car after they saw a hunting knife on the floorboard of the driver's side of the car. (*Id*. at p. 1036.) The *Long* court reasoned that a *Terry* suspect may break away from police control and retrieve a weapon from a car. (*Long*, *supra*, at p. 1051.) Additionally, if a *Terry* suspect is not placed under arrest, he or she will be permitted to reenter the car and will subsequently have access to any weapons that remain inside. (*Id*. at pp. 1051-1052.) A *Terry* suspect may be permitted to reenter the car before an investigation is over and may then have access to weapons. (*Id*. at p. 1052.)

Following *Terry*, the United States Supreme Court has held that nervous and evasive behavior is a pertinent factor when determining whether an officer's suspicion is reasonable. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124-125.) And reviewing courts have routinely upheld the constitutionality of searches where evasive behavior, coupled with other factors, supported a reasonable belief that a suspect may be armed. In *People v. Clayton* (1970) 13 Cal.App.3d 335 (*Clayton*), a defendant's unusual movement within the car rendered it reasonable for the officers to make a weapon search of his person, as "failure to take similar precautions [had] resulted in the death of many law enforcement officers." (*Id*. at p. 337.) And in *People v. Rios* (2011) 193 Cal.App.4th 584 (*Rios*), the Court of Appeal concluded that officers were justified in searching a defendant for weapons as he was a probable gang member, was overly dressed for the weather, belligerently refused to answer questions, was uncooperative, and made evasive movements even after he was asked to stop. (*Id*. at p. 599.)[4]

---

[4] These are just a few examples of cases where a defendant's evasive actions gave rise to a reasonable suspicion that he or she may be armed. In its written statement of decision below, the trial court relied on several other published cases including *Clayton*, *supra*, 13 Cal.App.3d 335, *People v. Hill* (1974) 12 Cal.3d 731, and *In re Reginald C.* (1985) 171 Cal.App.3d 1072, for the same proposition—that evasive conduct can support an officer's reasonable suspicion that a person is armed. In his reply brief, Castillo distinguishes *Clayton*, *Hill*, and *Reginald C.* on their facts. However, each individual
(continued)

Applying the rationale in *Long*, reviewing courts have also upheld protective *Terry* searches of items no longer in a suspect's possession, not just of an individual's person. For example, in *United States v. Brakeman* (10th Cir. 2007) 475 F.3d 1206, the Tenth Circuit determined that an officer lawfully opened an eyeglass case that may have contained a pocketknife even though the defendant had already been detained and the case was no longer in defendant's possession. (*Id.* at p. 1213.) In *People v. Ritter* (1997) 54 Cal.App.4th 274 (*Ritter*), the Fourth Appellate District upheld a search of a fanny pack that the defendant had removed after an officer observed an outline of a handgun inside the bag, and the officer's concerns for his safety were heightened following the defendant's responses to the officer's questions and requests regarding the fanny pack. (*Id.* at pp. 279-280.) The *Ritter* defendant argued that after he had removed the fanny pack, "the risk was eliminated, [and] the search was no longer justified as a safety measure." (*Id.* at p. 278.) The Court of Appeal disagreed, concluding that "the deputy did not act unreasonably in taking preventative measures to ensure that there were no weapons within defendant's immediate grasp during the ongoing investigation." (*Id.* at p. 280.)

In this case, Castillo argues that there are no specific articulable facts or inferences that reasonably warranted the search of his person or the blanket. He claims that even if the circumstances surrounding his police encounter warranted a search of his person, the facts were not adequate to support a search of the blanket, as he was detained and handcuffed on a bench several feet away, there were three police officers present, he was

---

case will be factually distinguishable in some respects, as no two situations are ever entirely identical. The cases, however, demonstrate that reviewing courts have uniformly held that evasive behaviors, when considered with other factors, can be used to support an officer's reasonable suspicion that his or her safety is at risk. And here, Castillo's actions were just one of several factors that the trial court considered when denying the motion to suppress.

9

not resistive or threatening, and the surrounding area, though known for unlawful parking and marijuana smoking, was not known for violent crimes.

Castillo ignores the facts that are contrary to his position. Substantial evidence supported the trial court's determination that Castillo acted evasively with the officers. Castillo remained lying on the blanket during his encounter with police, and he did not get up from the blanket even after an officer expressed concerns for their safety. This behavior, considered unusual by Deputy Medina based on his experience, reasonably suggested that Castillo may have been hiding something underneath the blanket. Castillo was also not initially cooperative with the officers; when asked where he was from, he said that he was from "the violent part of Watsonville," and he told officers that he had multiple dates of birth. Additionally, Castillo initially said he was going to clean up the area and leave, but he failed to do so.

Furthermore, the presence of three officers does not necessarily negate the officers' objective belief that searching Castillo's blanket was necessary to ensure their safety. Neither does the fact that Castillo was already handcuffed and sitting on the bench when the officers searched the blanket. If, for example, the officers had not arrested Castillo after his initial detention, he would have been free to return to the blanket and would have regained access to any weapons that were concealed underneath it. (See *Long*, *supra*, 463 U.S. at pp. 1051-1052.) Castillo was also not alone, as he was accompanied by a woman.

Castillo contends that cases like *Ritter* and *Long* are distinguishable because here, officers did not visibly see concrete evidence that alerted them to the presence of a weapon under the blanket. For example, in *Ritter*, officers saw the outline of a handgun inside the fanny pack before it was searched. (*Ritter*, *supra*, 54 Cal.App.4th at pp. 279-280.) And in *Long*, officers saw a hunting knife on the car's floorboard. (*Long*, *supra*, 463 U.S. at p. 1036.) We agree that *Ritter* and *Long* are factually distinguishable

10

on this point, but there is no requirement that officers must visibly see evidence of a weapon before a limited *Terry* search is constitutionally permitted. As set forth in *Terry*, the applicable standard is whether "a reasonably prudent [person] in the circumstances would be warranted in the belief that [his or her] safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.) A *Terry* search does not violate the Fourth Amendment if an officer has "an articulable and objectively reasonable belief that the suspect is potentially dangerous." (*Long*, *supra*, at p. 1051.) So long as the circumstances support an officer's objective belief, there is no Fourth Amendment violation.

We acknowledge that certain facts in this case, considered alone, would not have justified a *Terry* search. For example, "nervousness and furtive gestures are not sufficient by themselves to support a patsearch." (*People v. Fews* (2018) 27 Cal.App.5th 553, 560.) However, "our analysis is based on the totality of the circumstances and not picking each factor apart separately." (*Id*. at pp. 560-561.) Nervous and evasive behaviors are relevant to whether an officer reasonably believes a suspect to be dangerous, and " 'in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.' " (*Rios*, *supra*, 193 Cal.App.4th at p. 599.) In this case, there were multiple specific, articulable facts that gave rise to the officers' objective belief that a search for weapons was justified: the lateness of the hour, Castillo's evasive answers to deputies, and his failure to comply with their repeated directions to stand up from the blanket, which supported the inference that he may be concealing something underneath it. (See *Terry*, *supra*, 392 U.S. at pp. 25-26.)

Lastly, we acknowledge that Castillo also argues on appeal that the search was not justified because he was detained solely for infractions. (See *Knowles v. Iowa* (1998) 525 U.S. 113, 117-118.)[5] This argument, however, ignores the fact that it was the circumstances of his encounter with the police that caused the officers to suspect that he was dangerous. Accordingly, even if the search was not permitted as a search incident to an infraction, it was justified as a limited search for weapons under *Terry* and *Long*.

After carefully considering the circumstances of this case, we conclude that the trial court did not err by denying Castillo's motion to suppress because there was sufficient evidence to support the conclusion that a "reasonably prudent [person] in the circumstances would be warranted in the belief that [his or her] safety or that of others was in danger." (*Terry*, *supra*, 392 U.S. at p. 27.)

### III. DISPOSITION

The judgment is affirmed.

---

[5] The Attorney General concedes that the search of the blanket did not qualify as a search incident to arrest under the Fourth Amendment. The Attorney General, however, argues that the search was supported by *Terry* and *Long*.

_____
                                    Wilson, J.

WE CONCUR:


_____
                    Greenwood, P.J.




_____
                    Elia, J.




People v. Castillo
H049258