Filed 7/21/25  P. v. Smith CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REMONE SMITH,<br><br>    Defendant and Appellant. | B338666<br><br>(Los Angeles County<br>Super. Ct. No. SA108960) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Seth P. McCutcheon and Megan Moine, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Remone Smith (defendant) challenges the trial court's order denying his motion to suppress the gun and drugs that police found in his backpack. We need not decide whether the search was unreasonable because the discovery of the gun and drugs was inevitable. We accordingly affirm.

<strong>FACTS AND PROCEDURAL BACKGROUND</strong>

## I.   Facts

On a Saturday night in early October 2023, defendant was leaving a public park near 7th and Broadway in Venice. This area is a "stronghold for the Venice Shoreline Crip gang."

Two Los Angeles Police Department (LAPD) officers drove up alongside defendant, who held a backpack in his hand, as he walked down the sidewalk; from inside the patrol car, the officer put a light on defendant and "engaged" him "in conversation."

The officers got out of their car. When they did, defendant "dropped" the backpack he was carrying onto the ground between the sidewalk and a parked car; as the backpack hit the ground, one of the officers heard a "metal cling" consistent with the sound a gun would make. Defendant then offered that he was "fresh out of prison" and he "just did 16 years," but said he was not on parole.

The officers placed defendant in handcuffs. One of the officers picked up the backpack, supporting the bottom of it with his palm, and moved it to rest atop a nearby retaining wall. As he did, the officer felt the distinctly L-shaped form of a firearm through the backpack's material.

2

The officers at the scene called for backup, and two more officers arrived. An officer then moved the backpack more than a car length away from where defendant was standing while cuffed. The officer then opened the backpack to verify that what he had heard and had felt was, in fact, a firearm. Inside, he found a loaded firearm, methamphetamine and two bags of candy.

Defendant was placed under arrest. The officers ultimately determined that defendant was not on parole.

## II. Procedural Background

The People charged defendant with (1) possessing a controlled substance with a firearm (Health & Safety Code, § 11370.1, subd. (a)), (2) being a person with a prior violent conviction—namely, a prior conviction for voluntary manslaughter—in possession of a firearm (Pen. Code, § 29900, subd. (a)(1))[1], (3) being a felon in possession of a firearm (§ 29800, subd. (a)(1)), and (4) being a felon in possession of ammunition (§ 30305, subd. (a)(1)). The People further alleged that defendant's prior conviction for voluntary manslaughter constituted a "strike" within the meaning of our State's Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)).

At the preliminary hearing on these charges, defendant moved to suppress the gun and drugs. The trial court denied the motion, ruling that (1) the officers were "justified" in detaining defendant for both the "parole check" as well as potential possession of a firearm by a felon after "hear[ing] a metal cling"; (2) the officers were "justified in picking up the backpack" after defendant dropped the backpack—which the court found to be "highly suspicious"—and after the officer heard a "metal cling";

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

3

and (3) the officers were "justified" in "look[ing] inside" the backpack after "feel[ing the] weapon" through the backpack's exterior.

Defendant renewed his motion to suppress before the trial court. After soliciting briefing from the People and entertaining argument, the court denied the motion.

Defendant subsequently entered a no contest plea to the charge of being a person with a prior violent conviction in possession of a firearm. The trial court imposed a prison sentence of 16 months.

Defendant timely filed a notice of appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his motion to suppress. Because defendant litigated the motion during the preliminary hearing and did not introduce any additional evidence before the trial court, "we are 'concerned solely with the findings of the [preliminary hearing court].'" (*People v. Tacardon* (2022) 14 Cal.5th 235, 242.) "We defer to the magistrate's express and implied findings of fact if supported by substantial evidence," but "independently assess whether the challenged search . . . violates the Fourth Amendment." (*Ibid.*; *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232.) Because our review of the Fourth Amendment analysis is independent, we are not bound by the trial court's reasoning. (*People v. Vargas* (2020) 9 Cal.5th 793, 814.)

On appeal, defendant does not challenge the validity of the officers' conduct in stopping him or in seizing his backpack; instead, he argues that the officers' search of his backpack violates the Fourth Amendment.

As pertinent here, the Fourth Amendment protects the

"right of the people to be secure in their . . . effects, against unreasonable searches and seizures." (U.S. Const., 4th Amend.) Searches of personal property are "*per se* unreasonable within the meaning of the Fourth Amendment" unless (1) law enforcement has a warrant or (2) the People establish that an exception to the warrant requirement applies. (*United States v. Place* (1983) 462 U.S. 696, 701; *Riley v. California* (2014) 573 U.S. 373, 382; *United States v. Jeffers* (1951) 342 U.S. 48, 51.) A warrantless search conducted pursuant to an exception to the warrant requirement is valid only if it stays within the scope of that exception. (*Florida v. Royer* (1983) 460 U.S. 491, 500 ["'The scope of the search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible"'].)

Because defendant's backpack was not searched pursuant to a warrant, the People seek to justify the search as a permissible frisk for weapons under the *Terry v. Ohio* (1968) 392 U.S. 1 (*Terry*) exception to the warrant requirement. Under the *Terry* exception, police may pat down a suspect—as well as the suspect's personal effects—for weapons if "police have a reasonable belief" that (1) "the suspect poses a danger," and (2) "the suspect may gain immediate control of weapons." (*Michigan v. Long* (1983) 463 U.S. 1032, 1049 (*Long*); *People v. Lafitte* (1989) 211 Cal.App.3d 1429, 1431 [authorizing *Terry* "search for weapons in the area within a suspect's reach"].)

Currently, the courts are split on whether a *Terry* pat down search is reasonable when, at the time of the search, the suspect is secured and cannot realistically reach the item being searched.

In *People v. Ritter* (1997) 54 Cal.App.4th 274, the court held that "*Terry* does not restrict a preventive search to the person of a detained suspect even when the detainee is under the control of

5

the officer and cannot gain access to weapons." (*Id.* at p. 279.) *Ritter* went on to uphold a search of a "fanny pack" by a lone officer who could see the outline of a gun inside the pack worn by the suspect and who searched the pack after placing the suspect in the back of a patrol car. (*Id.* at pp. 276-277, 280.)

The bulk of cases in federal court, however, have construed the reach of *Terry* frisks more narrowly to permit pat down searches only if officers "have a reasonable belief that [the suspect] could get 'immediate control'" of a weapon from the place being searched. (*United States v. Leo* (7th Cir. 2015) 792 F.3d 742, 750 (*Leo*).) Whether a suspect is detained or handcuffed is not dispositive of whether they can gain immediate control of a weapon; instead, courts look to whether it is reasonable to believe that the suspect can still "break away from police control and retrieve a weapon" from the place being searched. (*Long*, *supra*, 463 U.S. at p. 1051.)

Under this narrower rule, police may conduct a *Terry* pat down search of the suspect's personal effects for weapons if a suspect is uncuffed, in the midst of being patted down, or within "easy" or "lunge reach" of a personal item (even if handcuffed). (*United States v. Johnson* (5th Cir. 1991) 932 F.2d 1071, 1072 [officer search of coveralls resting on nearby chair through which outline of a gun was visible, while suspect was "within the lunge reach" of coveralls; *Terry* search of coveralls valid]; *United States v. Flippin* (9th Cir. 1991) 924 F.2d 163, 166-167 [officer search of unexpectedly heavy bag, while officer was alone with uncuffed suspect; *Terry* search of bag valid]; *United States v. Atlas* (8th Cir. 1996) 94 F.3d 447, 449, 451 [officer search of nylon bag after hearing "thud" when bag hit the ground and feeling barrel through the bag's exterior, immediately after suspect was

subdued and cuffed by two officers; *Terry* search of bag valid];
*United States v. Johnson* (8th Cir. 1980) 637 F.2d 532, 533-535
[officer search of bag after seeing cloth-covered gun barrel
protruding from top, while suspect was within feet of the bag
being patted down by another officer; *Terry* search of bag valid].)
But, under this approach, *Terry* does not justify a search of a
personal effect where a suspect is handcuffed and where there is
no possibility that they can reach or gain control of a weapon
from that effect. (*Leo*, *supra*, 792 F.3d at pp. 749-750 [officer
search of backpack when suspect was cuffed and out of reach of
the backpack; *Terry* does not apply]; *United States v. Buster* (4th
Cir. 2022) 26 F.4th 627, 634 [officer search of bag when suspect
was "handcuffed on the ground" and out of reach of the bag; *Terry*
does not apply]; *United States v. Vaughan* (9th Cir. 1983) 718
F.2d 332, 333-334 [officer search of briefcase when suspect was
handcuffed and three other agents were on the scene; *Terry* does
not apply].) In this situation, and unless a different exception to
the warrant requirement applies, the officers must obtain a
warrant to search the personal effect. (Accord, *United States v.
Walker* (6th Cir. 2010) 615 F.3d 728, 730-731 [officers obtained
warrant to search suspect's bag].)

Which rule we apply would normally be outcome
determinative in this case. That is because defendant could not
realistically reach the backpack at the time of the search: At that
time, defendant was cuffed behind his back, there were three
other officers at the scene, and the backpack was more than a car
length away from where defendant was being detained.[2]

---

[2]     The same analysis applies even if we examine whether the
officers searched defendant's backpack incident to his arrest.
Searches incident to arrest are another exception to the warrant

We need not decide which rule to apply (and need not consider the People's further arguments regarding which rule to apply)[3] because, even if we apply the narrower rule applied in federal court and invalidate the search, the police would have inevitably discovered the gun and drugs in this case.[4]  The

requirement.  (*United States v. Robinson* (1973) 414 U.S. 218, 224; *People v. Macabeo* (2016) 1 Cal.5th 1206, 1213.)  Although such searches may occur prior to the arrest itself (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 111; *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1239-1240), such searches—like *Terry* pat-down searches—are also limited to only those areas it is "possibl[e]" for an arrestee to reach (*United States v. Horsley* (4th Cir. 2024) 105 F.4th 193, 208).

[3]     The People assert that the "plain feel" doctrine authorizes the search; it does not.  The "plain feel" doctrine authorizes an officer to search an area that *Terry* permits the officer to pat down in the first place (*Minnesota v. Dickerson* (1993) 508 U.S. 366, 372-375); the doctrine cannot *expand* the area that may be permissibly patted down.  The People also assert that *Illinois v. Wardlow* (2000) 528 U.S. 119 upheld a *Terry* frisk of a personal effect, but the issue in *Wardlow* was reasonable suspicion to stop in the first place; because *Wardlow* did not opine on whether *Terry* also authorized the search of the effect (*id.* at p. 124, fn. 2), it is of no assistance.  (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11 ["""cases are not authority for propositions not considered"""].)

[4]     Although this issue was not raised below, it may be raised for the first time on appeal so long as the necessary facts were developed in the record below.  (*People v. Boyer* (2006) 38 Cal.4th 412, 449, superseded by statute on other grounds as stated in *Barber v. Barnes* (C.D.Cal. Nov. 19, 2012) 2012 U.S. Lexis 179867; *Green v. Superior Court* (1985) 40 Cal.3d 126, 138-139 ["When, as here, the record fully establishes another basis for

inevitable discovery doctrine applies when the People establish a "strong probability" that the illegally seized evidence "would have been discovered by the police through lawful means," including through "application of routine police procedures." (*People v. Superior Court (Tunch)* (1978) 80 Cal.App.3d 665, 680-681; *People v. Robles* (2000) 23 Cal.4th 789, 800; *People v. Hughston* (2008) 168 Cal.App.4th 1062, 1072.)  Defendant does not dispute that there is probable cause to believe the backpack contained a firearm based on the "metal cling"; the officer so testified, and we have no basis to disregard the trial court's finding that this testimony was credible.  Defendant also admitted to the police he was a felon within seconds of encountering them.  Thus, the police had probable cause to arrest defendant before ever searching his backpack.  Upon his arrest, and because defendant was alone, police would have seized the backpack and subjected it to the usual procedures for taking inventory of an arrestee's personal effects.  (*People v. Scigliano* (1987) 196 Cal.App.3d 26, 29-30; see *Illinois v. Lafayette* (1983) 462 U.S. 640, 646-648 (*Lafayette*).)  When they took that inventory, they would have opened the backpack and found the gun and the drugs.

In supplemental briefing we solicited from the parties, defendant resists our inevitable discovery analysis on what boils down to three grounds.  First, he cites *United States v. Lundin* (9th Cir. 2016) 817 F.3d 1151, for the proposition that the inevitable discovery doctrine does not apply when "officers have

---

affirming the trial court's ruling and there does not appear to be any further evidence that could have been introduced to defeat the theory, we hold that the failure to have urged the theory below does not preclude our reliance on it to affirm the trial court's ruling"].)

probable cause to apply for a warrant but simply fail to do so." (*Id.* at p. 1161.) However, what makes discovery inevitable in this case is not that the police had probable cause to search the backpack, but that they had probable cause to arrest defendant and that, as part of the arrest and booking process, the backpack would have been inventoried and the gun and drugs inevitably discovered. (E.g., *People v. Dominguez* (1988) 201 Cal.App.3d 345, 353 [upholding use of the doctrine on similar facts].) Second, defendant argues that there was "no testimony that indicated that [he] was going to be arrested prior to the searching of the backpack," and notes that the police considered their encounter with defendant to be a "consensual encounter" prior to when he dropped the backpack. But however the police characterized their initial encounter with defendant, they later developed probable cause to believe defendant was a felon (based on what defendant told them) and to believe the backpack contained a gun (based on what they heard and felt in the backpack); we may reasonably infer that the officers would have arrested defendant for being a felon in possession even in the absence of confirmatory testimony. (*Dominguez*, at p. 353 [relying upon a "reasonable" "inference" in applying inevitable discovery doctrine].) Third, defendant argues that the inventory search doctrine only applies to automobiles and that the People must introduce evidence of the standardized procedures followed for such auto searches (*People v. Williams* (1999) 20 Cal.4th 119, 138 [discussing absence of a "policy supporting an inventory search" of an automobile specifying which parts of the vehicle would be searched]). Defendant is wrong: Inventory searches also include a defendant's belongings upon booking (see *Lafayette, supra*, 462 U.S. at pp. 646-648), and we may reasonably infer that the police

10

would have opened and looked inside the backpack in defendant's possession where, as here, there was no one else present to whom the backpack could be entrusted when defendant was arrested.

### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


I concur:


_____, J.
MOOR

11

The People v. Remone Smith
B338666

BAKER, J., Dissenting

I read the opinion for the court to hold the police have probable cause to arrest a person they think is a felon if they hear a "metallic ping [sound] consistent with a firearm" when the person drops a backpack to the ground. This sort of reaching misapplication of the probable cause standard is bad enough, but the opinion for the court then uses its probable cause finding to justify a search on an "inevitable discovery" rationale that is different from the rationale the trial court relied on to uphold the legality of the search in this case.

As I will explain, I do not join the majority's affirmance of the judgment. Instead, I would reverse the trial court's ruling and remand with directions to consider the viability of an alternative argument the People made but the trial court never reached: whether defendant and appellant Remone Smith (defendant) abandoned a backpack he was carrying such that he lacks standing to contest the subsequent search.

I
A

The facts are fairly straightforward and documented in most respects by footage from a police body-worn camera.

The police approached defendant in their patrol car as he was walking in the area of a public park one evening. He was

carrying a backpack. The officer who was the passenger in the patrol car trained his flashlight on defendant and spoke to him while still in the vehicle, though the officer could not later recall what he said. Soon thereafter, defendant "discarded" the backpack he was carrying by dropping it on the ground behind a nearby parked car. When he did, one of the police officers heard a "loud metallic ping consistent with a firearm." Nothing in the appellate record indicates the officer had any training or expertise in identifying the sounds that metal objects make when striking the ground.

The officers exited their patrol car and one told defendant that it was "[his] area," he "want[ed] to know everybody," and that they were going to have a "free conversation" and defendant could leave at any time. Defendant had removed his wallet by that point and he produced an EBT card to the officers as ID. Defendant told them he was "fresh out of prison; no parole, no nothing." At that moment, the officers told defendant they were detaining him and placed him in handcuffs; the backpack defendant had been carrying remained on the ground well out of reach near the parked car.[1] One of the officers told defendant they were going to verify he was not on parole, and if they did, the "cuffs will come right off."[2]

---

[1] After defendant was detained in handcuffs, one of the officers asked if defendant had been in the park. Defendant said he was going to the beach. When the officer expressed surprise because it was cold out, defendant said "I just did 16 years," suggesting that is how long he had been in prison.

[2] The officers later confirmed what defendant told them was correct: he was not on parole.

While defendant remained handcuffed, one of the officers said he would "get your bag so you [defendant] can see it and stuff." After the officer picked up the bag and walked with it over to where defendant was standing, defendant complained it was an "illegal search and seizure." The officer said he "just picked it up, bro."

The officer who picked up the bag did not feel anything suspicious inside when he picked it up. The officer would later testify, however, that he felt an L-shape object consistent with a firearm as he was walking the bag over to a nearby wall—though the officer claimed he had not "manipulat[ed]" the backpack. The officer then opened the backpack at the scene, saw a handgun, and defendant was arrested.[3]

### B

Defendant was subsequently charged with felon in possession of a firearm and ammunition offenses (and with possessing a controlled substance with a firearm). Defendant moved to suppress the gun and other evidence found as a result of the search of the backpack he was carrying.

The magistrate held a suppression hearing at which the facts I have already recited were developed. In arguing the suppression motion, the People contended defendant had no standing to challenge the search because he had abandoned the backpack. The People additionally argued the police stop of defendant was justified because the officers knew defendant had

---

[3]     In a police car after his arrest, defendant complained that the police had "search[ed his] property illegally." One of the officers replied he searched the backpack because he "felt a gun inside" and "knows what a gun feels like."

been released from prison and they heard the metallic ping sound when he dropped the backpack. (The People did not articulate, however, how stopping defendant, even if permissible, justified the warrantless search of the backpack.)

The magistrate denied the defense suppression motion and articulated its rationale for doing so: "I do believe the officer when he said he heard the metal cling, and I do believe that if you follow from there, that the rest of the actions that the officer takes are justified. He's testified that after he hears the metal, the object inside there clings. He's justified in picking up the backpack, and then he feels it. And, of course, after he feels this weapon in there and after hearing it, he's going to look inside there, and he's justified to look in there at that point." The magistrate did not reach the abandonment argument made by the People.

II

Setting aside the abandonment issue to which I shall return in a moment, the key to a proper understanding and resolution of this case is timing. The moment in time that matters is the moment when the officer picks up and moves the backpack defendant was carrying—because that is a seizure and search of the backpack. Aside from exigent circumstances and regulatory prerogatives not at issue here, the police cannot, consistent with the constitution, indiscriminately pass through public parks, public beaches, shopping malls, and the like picking up bags, luggage, or purses belonging to others and moving them about.[4] (See, e.g., *Bond v. United States* (2000) 529 U.S. 334, 335-

---

[4] The majority says defendant "does not dispute that there was probable cause to seize the backpack." That is to some

4

336, 339 [border patrol agent's physical manipulation of bus passenger's bag in an overhead compartment was a warrantless search violating the Fourth Amendment]; see also *United States v. Jacobsen* (1984) 466 U.S. 109, 113 ["A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property"].)

That is why the opinion for the court does not even attempt to independently justify the warrantless seizure and search of the backpack as the magistrate incorrectly did. Even assuming the police had probable cause to believe there was contraband in the backpack defendant was carrying, they still needed a warrant to seize and search it; the backpack was not in a location that would justify seizing and searching it for officer safety protective reasons.[5] (See generally U.S. Const., 4th Amend.; *Michigan v. Long* (1983) 463 U.S. 1032, 1049.)

---

degree both irrelevant and incorrect. Probable cause alone does not justify a seizure; a warrant is required unless an exception to the warrant requirement applies. In addition, defendant did contest the seizure of the backpack during the suppression hearing; defense counsel argued the police had "no reason whatsoever to seize the backpack." Although appointed counsel in this court retreats some from that position ("officers may have had the probable cause necessary to seize [defendant's] backpack once the metal sound was heard") to focus on other issues and expound on his view of "life as a Black man in the United States," defendant has not conceded the seizure and search of the backpack was proper.

[5] The parties have not asked us to decide whether there was an appropriate basis to stop and detain defendant in handcuffs, so I do not address that point.

5

Instead, the majority takes a more circuitous path to uphold the search and seizure. The majority says the fruits of the warrantless search and seizure of the backpack need not be suppressed because (1) the police had probable cause to arrest defendant, (2) the contents of the backpack would have inevitably been inventoried if and when he was arrested, and (3) the gun and contraband would have been discovered during this inventory process. The first step of this reasoning is the problem.

Even crediting the testimony of the officer who testified at the suppression hearing (as supplemented by the irrefutable body camera footage), at the time the police seized and searched the backpack defendant was carrying the only material facts they knew were these: defendant had recently been released from prison and he had been carrying a backpack that had something inside that made a loud metallic ping sound when dropped to the ground. That is not probable cause for an arrest, as the officers in this case *knew and admitted* themselves when telling defendant the "cuffs would come right off" once they verified he was not on parole—that is, after they knew he had been in prison and heard the metallic ping sound.

There are myriad innocuous metal objects that could be in a backpack and make a pinging sound when dropped to the ground: water bottles, construction tools, lunch boxes, children's toys—I could go on. There was no evidentiary basis to conclude the police in this case had any expertise in distinguishing one metal pinging sound from another, which is why the magistrate made a factual finding only that the officer credibly testified he heard a metallic ping, not a finding that this ping was necessarily (or even probably) made by a firearm.

The notion that the police can make a custodial arrest of anyone dropping a bag with a metal object in it (at least if they believe the person has previously been in prison) is troubling enough—gymgoers beware.  But even worse, the majority uses its defective but expansive probable cause arrest rationale to retroactively justify the police's warrantless search of the backpack on inevitable discovery grounds that the magistrate never relied on, that the People never argued below, that the Attorney General did not even argue on appeal—until specifically invited by the majority, and that was practically unnecessary when the police had ample ability here to obtain a warrant.  I cannot join this sort of bootstrapping affirmance.

Though I believe the majority's rationale for affirming is flawed, I would not reverse the suppression ruling and the criminal judgment outright.  That is because there is an argument that was made below by the People that the trial court never reached and that I believe merits serious consideration: whether defendant abandoned the backpack by dropping it behind the car when the police approached.  (See, e.g., *People v. Brown* (1990) 216 Cal.App.3d 1442, 1451.)  I would accordingly reverse with directions to decide that issue.


BAKER, J.